MONTVILLE WALDO HOWARD *et al.*

*v.*

THE ILLINOIS TRUST AND SAVINGS BANK *et al.*

*Opinion filed February 20, 1901—Rehearing denied April 16, 1901.*

1. EVIDENCE—*statements of counsel not proved are to be disregarded.* Statements of counsel as to what he expects to prove do not have the weight of testimony and if not proved are to be disregarded, and hence evidence not otherwise competent cannot be admitted to discredit a statement which there is no attempt made to prove.

2. SAME—*registers of births are admissible to prove the fact recorded.* Registers of births, deaths and marriages made pursuant to the statute and within its requirements are admissible in evidence to prove the fact recorded.

3. SAME—*physician's return of birth not evidence of hearsay statements therein.* A physician's return of birth is only evidence of facts necessarily within his knowledge and not of matters of mere hearsay gathered up by him, and hence is not evidence to prove a statement contained therein that the child was the second one borne by the mother, which was not a fact within physician's knowledge.

4. SAME—*when paper is not admissible as a memorandum of a person since deceased:* A physician's return of birth is not admissible in evidence after his death as a memorandum made by a person, since deceased, in the ordinary course of business, where the same evidence which shows it was so made also shows that it was false and intended to be false, so far as the truth was known about it.

5. SAME—*records of courts afford no evidence of general publicity of their contents.* Records of courts operate as constructive notice to parties under certain conditions, but they are not kept for the purpose of disseminating news, and afford no evidence that the facts stated therein are generally and publicly known.

6. SAME—*when photographs of deed are inadmissible.* If the original deed is in evidence, photographs thereof, of the same size as the deed, are mere duplicates of the deed and are not admissible in evidence.

7. SAME—*enlarged photographs of a deed are admissible.* If it is claimed by expert witnesses that an original deed, which is in evidence, has been altered by erasing the original writing and substituting new matter, photographs of the deed are admissible, under proper precautions, when so enlarged as to illustrate the testimony of the witnesses and to aid the jury in the same way as would a magnifying glass.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

T. A. MORAN, for appellants.

TENNEY, McCONNELL, COFFEEN & HARDING, and BANCROFT & ADAMS, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants brought this suit in ejectment in the superior court of Cook county against appellees to recover thirty-seven and a half acres of land in that county, appellant Howard claiming an undivided five-ninths and appellant Lowenhaupt an undivided four-ninths thereof. The plea was the general issue, and upon a trial there was a verdict of not guilty and that the right of possession in fee simple was in the appellees. Judgment for costs was entered against appellants.

Both parties claimed title from John McCaffery, deceased,—the plaintiffs through a conveyance from him to the plaintiff Howard, and the defendants as executor, trustee and devisees under his will. Plaintiffs, to maintain the issues on their part, offered in evidence a deed of lands, including the tract in question, from John McCaffery to plaintiff Howard in consideration of one dollar, love and affection and valuable services rendered to the grantor. In the deed McCaffery retained a life estate in the premises, and it was dated December 19, 1893, acknowledged December 20, 1893, and recorded November 18, 1898. The lands described in the deed constituted a farm of about one hundred and fifteen acres, consisting of a fractional eighty and a fractional forty, and this action is for the fractional forty. John McCaffery made his will August 29, 1892, and executed a codicil thereto January 6, 1894. He died June 1, 1894, and the will and codicil were admitted to probate. Plaintiffs also proved

by the notary who took the acknowledgment, that McCaffery acknowledged the deed before him at the date of the certificate and delivered it to Howard at that time, and there was no evidence to the contrary, but the notary did not know the contents of the deed. Deeds were introduced in evidence from Howard and wife to plaintiff Lowenhaupt, conveying an undivided four-ninths of the premises. The genuineness of the deed from McCaffery to Howard was the sole issue in the case. The defendants did not deny the signature of McCaffery or the acknowledgment, but claimed that the entire deed above McCaffery's signature had been forged by erasing all the writing that was there when McCaffery executed it and then writing in all that is now in the deed above his signature. Evidence was introduced as to the nature of the consideration for the deed, but in the action of ejectment that question was not material, except so far as it had a bearing, if any, on the genuineness of the deed, which was the single question of fact. The deed acknowledged good and valuable considerations, and if it was genuine and operative to convey title, the nature or value of the consideration was not a subject of inquiry. On that subject, plaintiffs, in making out their case, offered evidence tending to prove the following facts:

Mrs. Rose Howard, the wife of plaintiff Howard, before her marriage was Rose McCahill. She was the niece of Ann McKeon, with whom McCaffery lived but to whom he was not married, and Rose lived in the family. Rose had a son by McCaffery named John C. McCaffery. John McCaffery took Rose to the private hospital of Dr. B. A. Colwell, in Chicago, where the child was born February 17, 1884. Rose returned to the McCaffery home to live, and the child was put under the care of nurses until about two and a half years old, when he was brought to the McCaffery home and taught to call McCaffery his grandfather, and the story was told that he was the son of a friend,—a railroad man. Plaintiff Howard afterward

married Rose, in July, 1888, and they still lived in the family, but Howard was ignorant of the boy's parentage until the latter part of 1893. McCaffery then wanted to adopt the boy and was seeking for the consent of the mother, and thoughtlessly appealed to Howard to get her to consent. In that way the truth became known to Howard, and he was angry and proposed to take his wife and leave. McCaffery implored them to remain and then made the deed. Dr. Colwell was dead at the time of the trial and his widow was plaintiff's witness. She had been in the habit of visiting McCaffery frequently after the boy was born and getting money or loans from him. The deed was made about six months before McCaffery's death and was not recorded for five years or four and a half years after his death, and in the meantime Howard had not made any claim to the land. There was evidence tending to prove that he had the deed in McCaffery's lifetime and that he supposed it was destroyed shortly after McCaffery's death. Mrs. Colwell testified that Mc-Caffery told her he had made the deed, and she said Mrs. Howard brought it to her three or four weeks after Mc-Caffery's death, and she had it until just before it was recorded. On cross-examination she identified a return of a birth made by her husband to the county clerk as that of this boy. The defendants afterward offered the return in evidence, and it was admitted against the objection of plaintiff. It gave the name of the child as John; the date of the birth February 17, 1884; the name of the mother Harriet Beck; the name of the father unknown; the residence of the mother Maywood, Illinois; her nationality Canadian, and the number of the child the second.

It is argued that this return of Dr. Colwell was legitimate evidence to prove that this was Rose McCahill's second child, and that this fact has some bearing on an explanation which was offered why the deed was not recorded,—at least after the death of John McCaffery.

The supposed evidence which, it is said, the return would tend to discredit, consists mainly of a statement made to the jury by plaintiff's counsel in stating the case and what he expected to prove, which has been copied into the record. Plaintiffs offered no evidence tending to prove the fact stated and referred to by counsel. If an alleged fact stated by counsel is not proved by the evidence it is to be disregarded. Such statements do not have the weight of testimony, and the certificate was not admissible to disprove what counsel said to the jury. Counsel stated what he said he expected to prove, but did not prove it or attempt to.

It is also urged that the return would tend to disprove an explanation of plaintiff's counsel, made before the suit was begun, as to why the deed had not been put on record sooner. Defendants called witnesses who testified to explanations given by an attorney representing plaintiffs, which, he said, he hoped would induce defendants to give up the land without a lawsuit. Among other statements, the attorney had said that Mrs. Howard dreaded the scandal and disgrace which would follow. Having proven what the attorney said in the endeavor to get the land peaceably, defendants made it the subject of attack by this return, which said that the child was the second, from which alleged fact they argued that Mrs. Howard could not have feared scandal and disgrace.

Registers of births, deaths and marriages made pursuant to the statute and within its requirements are admissible in evidence to prove the fact recorded. On account of the credit due to the officials empowered to record the facts in the public interest, such registers are evidence of the facts without the usual tests of truth. (1 Greenleaf on Evidence, sec. 484.) In this case it had been proved, and it was conceded, that Dr. Colwell kept a place for private cases, as they were called, where it was desired to suppress the truth and to prevent anybody from getting information of the actual facts. He solicited, by

circulars among physicians, the business of parties who had need of falsehood and deceit and the active co-operation of a doctor to that end. The return was made to satisfy the law, and his universal practice was to send in a false return. The return in this case, so far as it purported to state any known fact except the date of birth, was false. The name of the mother was not Harriet Beck, her residence was not at Maywood, she was not a Canadian, and the name of the father was not unknown. The only evidence that this certificate related to John C. McCaffery was parol evidence that he was the only male child born on that day at that place, and all its other statements, if proof of anything, showed that it did not refer to him or his mother. The certificate had been impeached by both parties, and could not be regarded as a genuine certificate or legitimate evidence of the fact that John C. McCaffery was his mother's second child. That was clearly the purpose for which it was introduced, and counsel, after contending that it was legitimate evidence of that fact, also insist that it was proper evidence to show the character of the witness Mrs. Colwell, by showing that she assisted and connived at carefully prepared falsehoods and was engaged in the business of making false returns. Of course, it was not introduced for two opposite and conflicting purposes or presented to the jury in that way. If it was true, as counsel contend, that the practice of falsehood with reference to matters in violation of public morals and public law would tend to disgrace and discredit Mrs. Colwell as a witness, she had already testified fully to that fact. She said she had been engaged in that business and in making false returns which were essential to the success of the business, and the fact was not in dispute. Furthermore, the fact which the return was introduced to prove could not be proved in that way if the certificate had not been impeached. The statute provides that physicians shall report, within thirty days from the date of their occur-

rence, all births which come under their supervision, with such correlative facts as the board of health may require. (3 Starr & Cur. Stat. p. 3782.) There was no evidence that the board of health ever required information as to the number of the child, and the rule which makes the official register admissible includes only those facts which occur in the presence of the physician making the return. The return is not evidence of matters of mere hearsay gathered up by the physician, of which he knows nothing. It is only evidence of facts necessarily within the knowledge of the person making the entry. (1 Greenleaf on Evidence, sec. 493.) The return as to the matter which counsel insist upon, was not of a fact within the knowledge of Dr. Colwell and no evidence of the fact. It is also contended that the return was a minute or memorandum by a person since deceased, made in the ordinary course of his business, and admissible on that ground. The same evidence which showed that the return was made by Dr. Colwell in the course of his business showed that it was false and intended to be false, so far as the truth was known about it. The court erred in admitting the certificate.

Another paper admitted in evidence against the objection of plaintiffs was the petition of John J. Mitchell, guardian of John McCaffery, Jr., filed in the probate court of Cook county, asking the court's approval of his agreement to pay $125 a month to Rose Howard for the support of the boy, and stating that she was his mother. The court also admitted an order of the probate court approving the action of Mitchell. The statements of the petition were made by Mitchell, and so far as the maternity of the boy was concerned, Mitchell's statement was mere hearsay. The statement did not tend to prove any issue between the parties, and if the fact had been in controversy and Mitchell knew it, he was competent to testify to it. The petition was no evidence of the facts stated in it.

It is urged, however, that the petition and order were competent evidence of the publicity of the relation between McCaffery and Mrs. Howard before her marriage, so that she could not have feared scandal that'would have followed the recording of the deed. The records of courts operate as constructive notice to parties under certain conditions, but they are not kept for the purpose of disseminating news. The only question relating to public scandal and disgrace was whether the fact that Mrs. Howard was the mother of John C. McCaffery was generally and publicly known, and this petition, filed away in McCaffery's estate, affords no evidence of general publicity. It was error to admit it in evidence.

The court also permitted defendants to prove the loss of McCaffery's will. A certified copy of the will had been admitted in evidence, when offered by plaintiffs, without objection. The only excuse now made for offering this proof is, that if defendants could have put in evidence the original, the jury would have been permitted to compare the signatures to the will and the deed. Under the rule in this State, signatures, generally, of McCaffery could not be used for the purpose of comparison, and counsel say it was legitimate to show that they were deprived of the privilege of comparison with the original will. There was no evidence whatever tending to show that the signature of John McCaffery to the deed was not genuine, or that, if the defendants had found the original will, it would have disclosed any difference in the signature. To say that perhaps it might have done so, although counsel now say that there was no controversy over the genuineness of the signature, did not justify the admission of the proof.

The court also admitted in evidence a petition of the defendant the Illinois Trust and Savings Bank for a citation against the plaintiff Howard, which stated that Howard had refused to give any information concerning the transaction, and his counsel refused to give any; that

petitioner had reason to believe that Howard had information concerning the title, and that the information was necessary for the recovery of the property by the trustee. This petition was not competent evidence of anything. If there was any inference of fact to be drawn from Howard's conduct, the party who swore to the petition was on the stand and could testify to everything that he knew about it, with the right of cross-examination. It is contended that it was admissible for the purpose of showing the date of its filing, the pendency of the proceeding and the subject matter of certain conversation. We cannot discover that the date of its filing, or the other grounds stated, were relevant to any question or controversy in the case.

Experts, who had examined the deed, testified, in behalf of the defendants, that it showed evidence that the writing above the signature had been removed by the application of chemicals, and that the writing now appearing in the deed had been written afterward and after the instrument had been folded more or less. The original deed was in evidence, together with the testimony of these experts, and the defendants also offered in evidence photographs, both of the same size as the deed and those in which it was enlarged. The photographs were objected to and the objections were overruled. The photographs of the same size as the deed, if they were truthful and accurate, were merely secondary evidence of its contents and appearance. Ordinarily, merely secondary evidence cannot be produced without proof of the loss of the original. As the original was in evidence, the general rule would be that its contents or appearance could not be proved by any kind of copy. In *Duffin* v. *People,* 107 Ill. 113, a photographic copy of a note which had become illegible was introduced in evidence. Parol evidence or a compared copy would have been competent in that case, and it was held that the photograph was admissible as secondary evidence. This was because the

original had faded out, and the decision was in harmony with the general rule. In *MacLean* v. *Scripts*, 52 Mich. 214, a party offered depositions of experts to determine the identity of hands from the photographs of letters. The originals could be obtained, and it was held that proof of handwriting of obtainable originals could not be made by any kind of imitation or copy. In *Hynes* v. *McDermott*, 82 N.Y. 41, it was held that photographs could not be used for comparison when the originals were not before the jury so that the originals could not be shown to the witnesses on cross-examination or to other witnesses. In that case the photographs were not proved to be correct. In *Eborn* v. *Zimpelman*, 47 Tex. 503, depositions of witnesses as to the genuineness of a signature from photographic copies annexed to interrogatories were offered. There was no proper foundation for their introduction, and it was also held that photographs can only be used as secondary evidence, but where originals cannot be produced photographic copies may be used. In *Tome* v. *Parkersburg Branch Railroad Co.* 39 Md. 36, the evidence of a photographer was offered to prove the forgery of certificates of stock by comparison with photographic copies, either magnified or of the natural size, and they were held inadmissible. In *Matter of Foster's will*, 34 Mich. 21, the circuit court rejected photographic copies of a will. The Supreme Court said that it might not be error to admit them with precautions to insure identity and correctness, but they were not necessary, and, at best, only convenient aids, and their use could never be compulsory. In *Alberti* v. *Railroad Co.* 118 N. Y. 76, the plaintiff was in court, but it was held not error to admit a photograph of his limbs to show how they had contracted, on the ground that photographs were admissible the same as a map or diagram. In *Commonwealth* v. *Morgan*, 159 Mass. 375, it was held that the preliminary question whether a photograph is verified is for the judge, and that a photograph was admissible to prove that de-

fendant wore side-whiskers when it was taken. In *State* v. *Hersom*, 90 Me. 273, a photograph of a house was admitted in evidence. The defendant had the same opportunity as the State to ascertain whether it was correct. It was held admissible, and that any plan or picture may be admitted, in the discretion of the court, in illustration or explanation of testimony. In *Dorsey* v. *Habersack*, 84 Md. 117, the court admitted photographs of a building, and it was held no error and that the jury could judge of their accuracy from the testimony. In *State* v. *O'Reilly*, 126 Mo. 597, the State introduced a photograph of the interior of a saloon where a shooting occurred, with three pre-arranged figures to indicate the positions of the parties. It was held no error, on the same principle that a diagram is admitted, with a right to cross-examine as to correctness and proportions. In 11 American and English Encyclopedia of Law (2d ed. 539) it is said that a photograph duly authenticated is admissible when the original cannot be seen and where the person or thing would be relevant if produced in court.

It will be noticed that some of these cases were decided where the rule permits the production of papers merely for the purpose of comparison. But that rule, perhaps, would not affect the principle. It is also apparent that photographs of the deed could not be admitted on the same ground that a map, plat or diagram of scenes or objects is admissible. Counsel contend that in this instance the photographs of the same size as the deed were admissible as primary evidence of peculiarities not visible to the eye. One of defendants' witnesses testified to observing the same peculiarity which is mainly insisted upon, and if a photograph is a true copy or imitation of the original it is necessarily secondary evidence only. The instrument itself is subject to examination with all the lights and aids of science and expert skill. It might, perhaps, be said in numerous cases that photographic copies would show something that could not be

seen in the original, but we are not prepared to extend the rule against the introduction of merely secondary evidence. We think the photographs which were mere duplicates of the deed should not have been admitted.

As to the photographs which were so enlarged as to make the proportions plainer we see no valid objection. Magnifying glasses and microscopes have always been used and parties are entitled to use them. The Supreme Court of Tennessee reversed a judgment because the judge refused a party leave to furnish the jury with magnifying glasses when they retired but told the jury that they might use their own spectacles. (*Kannon* v. *Galloway*, 49 Tenn. 230.) The Supreme Court of Indiana held it was not error to exclude an enlarged signature made by hand by means of a microscope, the witness having testified fully as to the signature and its appearance in an enlarged condition. (*White Sewing Machine Co.* v. *Gordon*, 124 Ind. 495.) In 1 Greenleaf on Evidence (16th ed. 439) it is said that a photograph,—particularly an enlarged one,—of a writing is a proper method of exhibiting its contents. In *Marcy* v. *Barnes*, 16 Gray, 161, the question was as to the signature of Moses Barnes. Magnified photographic copies of genuine signatures and the disputed signatures went to the jury, with testimony of a witness of accuracy except as to size and color. The court said: "It is not dissimilar to the examination with a magnifying glass. Proportions are so enlarged thereby to the vision that faint lines and marks, as well as the genuine characteristics of handwriting which perhaps could not otherwise be clearly discerned and appreciated, are thus disclosed to observation, and afford additional and useful means of making comparisons between admitted signatures and one which is alleged to be only an imitation." It was held that such copies were admissible under proper precautions. It was not error to admit the photographs which were enlarged to such an extent as to illustate the testimony of the witnesses

and to aid the jury in the same way as the magnifying glass or microscope would.

There are other questions raised and argued, but we do not think they are likely to arise again upon another trial and do not consider it necessary to spend time in settling them.

The judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*