LAND, J.
Plaintiff, as the holder and owner, for value before maturity, of a certain promissory note for $4,500, has instituted suit against the defendant, the alleged maker, to recover said sum with interest and attorney’s fees.
The note is of date September 12, 1919, is payable to maker, and purports to have been indorsed by him.
Immediately below the alleged signature of the maker as indorser appears the fo'lowing indorsement: “For collection Eph. Rosenberg.”
Defendant denies in his answer that said note was made by him, or was signed by him, but alleges that said note is a forgery.
We have before us as admitted genuine signatures of the defendant:
(1) A signature card of defendant at the Bank of Orleans, New Orleans, La., signed by defendant February 3, 1911: “H. J. Robbert.”
(2) Four photographs of admitted signatures of defendant to four different notarial acts.
The note sued upon,. bearing the alleged signature of defendant both as maker and indorser, is also filed in evidence in the case, together with photographs of the face and back of said note showing the alleged signature of defendant as maker and as indorser. We have also before us the enlarged photographs of the disputed signatures of defendant to said note.
The defendant, H. J. Robbert, admitted on the witness stand on direct examination that he had been connected in business transactions with a Mr. Cavalier, from whom he had purchased diamonds, and who had also sold diamonds for him. Defendant also ad *560 mitted that he had indorsed for Cavalier five or six tiines, involving altogether the sum of about $12,000, and that these indorsements were without consideration. Witness stated that he-had trusted Cavalier implicitly, and that Cavalier had never asked him for an indorsement which he had denied. t
The defendant was called on cross-examination by counsel for plaintiff, and after denying that he wrote and indorsed the note sued upon, was interrogated and answered as follows:
“Q. You saw this note, did you not, in my office, shortly after September 12th (date of note) ? A. Yes. Q. Did you tell me then that the note was a forgery? A. I informed my attorneys that it was a forgery. Q. Did you inform me that it was a forgery? A. No, sir.” Ev. 44.
Defendant attempted to explain his failure to advise plaintiff’s counsel that the note was a forgery, by stating: “I informed my attorneys that it was a forgery.”
This explanation does not appear to us satisfactory, as any reasonable man would, as a matter of self-interest, brand a note as a forgery, if it were so, as soon as it was xoresented to him, and especially would a reasonable man do so in the office of an attorney at law in the possession of the note, and who would in all probability bring suit against him as the maker Of the note for its collection. Silence, under such circumstances, strongly indicates that the note in question was not a forgery, for self-interest naturally dictates self-protection at all times.
Defendant also attempted a further ex-X^lanation of his silence in the office of plaintiff’s attorney as to the note being a forgery, by stating that he had seen the note at the Whitney Central Bank, after the bank had notified him that he had a note due for payment, and that he “informed Mr. Robin” that it was not his signature. Ev. 44.
Defendant repeats this testimony in his direct examination, and states “I said to Mr. Robin that I would presume it was a piece of Cavalier’s work.” Ev. 50, 53.
Mr. James A. Robin, vice president of the Whitney-Central Bank & Trust Company, and previously vice president and cashier of the Bank of Orleans, was placed on the witness stand in this case by defendant, and after testifying to the amount of defendant’s deposit in bank on September 21, 1919, was asked by counsel for defendant the following question:
“Are you the same Mr. Robin to whom Mr. Robbert referred when he spoke about the note in controversy here, and notice of payment and demand being made? A. Yes, sir.”
The testimony of this witness closed with this answer. There was no cross-examination. Counsel for defendant made no attempt whatever to prove by Mr. Robin, in corroboration of Robbert’s statement, that he had denied to Mr. Robin-his signature to this note at the bank, as soon as he saw the note, and had stated then to Mr. Robin, at an inauspicious time, that he suspected Cavalier of forging the note.
When called on cross-examination, the defendant was also asked the following questions by counsel for plaintiff:
“Q. Did you inform Mr. Rosenberg that you claimed the note was a forgery? A. I did not know that Mr. Rosenberg- held the note. Q. Is not that on the, back, ‘Held for collection for account of Eph Rosenberg’? A. I did not notice it; I saw the signature here, and I turned it over and saw the signature on the back, and I knew that I did not sign a note made payable to my order, and indorse it.” Ev. 44.
The signature on the back of the note is “H. J. Robbert,” and immediately beneath it is written in a plain and legible hand, “For collection Eph. Rosenberg.” The right prong of the letter “F” beginning the word “For" runs into the lower end of the “J” in Robbert’s signature. It is, therefore, not physically possible for any one to see the signature of H. J. Robbert on the back of this *562 note, without noticing at the same time the indorsement, “For collection Eph. Rosenberg.”
The defendant is no stranger to the plaintiff. He testifies that he has known Mr. Rosenberg “two or three years, maybe longer.” Ev 53.
Yet when defendant saw Rosenberg’s name on the back of this note immediately beneath his own indorsement, and knew that Rosenberg held this note, defendant failed to notify him that it was a forgery.
The purpose of the questions propounded by plaintiff’s counsel to defendant was to show that defendant had not made up his mind to plead forgery to this note until the eleventh hour, and that such defense is not made in good faith, but as a last resort to es^ cape the payment of the note. We are constrained to concur in this view of the matter, under the facts of this case. The signature of defendant to the note sued upon as maker and as indorser has been declared genuine by two paying tellers of the Whitney-Central National Bank, O. A. Ferrier and F. C. Meevers. Jr. Both of these witnesses state that they would have paid checks on the signature of defendant to the note sued upon.
Mr. Ferrier’s testimony is especially strong in that he was teller of the Bank of Orleans for 15 years. This period goes back as far as the year 1908. He was therefore teller in this bank February 3, 1911, when defendant signed the bank card of the Bank of Orleans, filed in evidence in this case. He states that defendant had an account in that bank, and testifies further as follows:
“Q. Do you know his signature-? A. Yes, sir. Q. I show you a note sued on, and ask you if you think that is Mr. Robbert’s signature' and indorsement? A. Yes, sir. Q. You have examined that note before? A. Yes, sir. Q. You went with me to the vault of the civil district court and examined it thoroughly? A. Yes, sir. Q. And you believe that is Mr. Robbert’s signature? A. Yes. Q. Would you have paid checks on that signature? A. I certainly would. Q. You do not think you may be mistaken? A. No, sir; I would not hesitate to pay them. Q. I show you the signature card of Mr. Robbert at the Bank of Orleans, dated February 3, 1911, and ask you if you have ever seen that before, and did you compare that card with the signature on the note? A. Yes. Q. Are you still prepared’ to swear that the note and the signature are genuine signatures? A. Yes. Q. You have paid thousands of checks, I suppose, signed by Mr. Robbert? A. In amount I could not specify how many, but several thousand, for 15 years, I guess. Q. He drew a great "’many checks? A. Yes. Q. Did you ever pay a check that he said was not his signature and raised the question of forgery? A. No, sir.” Ev. 22, 23.
Judge Ca.£e, at this point, asked the following questions:
“Do not you and all other paying tellers recognize checks like you would recognize a man in the street, or a horse that you knew, or a dog that you knew, and when you see it you believe that you see the genuine signature? A. Yes, as a rule, when I see a signature, I see the man. * * * Q. And you pay on that knowledge, just as if the man walked up to your window and you recognize him as so and so? A. Yes, sir.” Ev. 23, 24.
Mr. Meevers, after stating that he had been teller at the Whitney-Central National Bank for over a year, that defendant had an account there, and that witness had paid checks signed by defendant quite frequently, testified as follows:
“Q. I show you the note which is now being contested before the court, and ask you to examine it thoroughly, as well as the indorsement— A. I should say that is Mr. Robbert’s signature. Q. You could be positive in that? A. I would pay a check on it. Q. You have seen his checks probably hundreds of times? A. Very frequently, seen quite a few.” Ev. 20, 21.
Judge Cage then asked the following questions:
“To the ordinary paying teller in a bank, are not signatures about like faces of men are to a layman, that you know his signature, as I would recognize an acquaintance on the street? A. After we have passed upon them a few times, yes.” Ev. 21.
*564 Bank tellers are not experts in handwriting, it is true. However, they are practical experts, whose duty it is to pass daily upon the genuineness of the signatures of the depositors in the bank, and to protect the funds of the bank against forgeries. Their accuracy in such matters is duly attested by the questions of the lower court and the answers made to these questions by the two' tellers in this case. Such testimony necessarily carries with it great weight, especially in a case like the present, in which the conduct of the defendant who has pleaded forgery has been at such variance with the usual actions of a reasonable man when he discovers that his signature has been forged. The testimony of the tellers in this case is fully corroborated by that of L. Sehulhoeffer, who has made a special study of examining signatures, and has frequently .testified in the courts of Alabama, Florida, and Louisiana, and in cases in work for the government. His conclusion is that “the person who wrote these admitted signatures wrote' also the disputed ones, “i. e., that the defendant made the signatures to the note sued upon, as wéll as to the bank card and the notarial acts, admittedly signed by him.
Article 325 of the Code of Practice provides that—
“If the defendant deny his signature, * * * or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name. But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code”
—which provides in article 2245 that—
“If the party disavow the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases.”
This rule of proof by comparison has been complied with in the present case both in the testimony of Mr. Ferrier, the bank teller, and in the testimony of the expert witness, L. Sehulhoeffer, who testifies as to the analysis of the signatures made by him as follows:
“I first examined the standard writings or admitted signatures, making a study of the characteristics of such, and making notes of such, and I examined in identically the same way the questioned document. I compared the two, and have come to the conclusion that they were identically the same handwriting. I had enlargements made of these signatures, and in examining these signatures I have a regular standard outline, first looking at the general appearance of the signature, then at the alignment, then at each individual letter, and the shading and pen pressure and the slant and the pen lift and punctuation.” Ev. 35.
The enlarged photographs of the signature were properly admitted in this case, so as to make the proportions plainer for the purpose of illustrating the testimony of experts. Howard v. Illinois Trust & Savings Bank, 189 Ill. 568, 59 N. E. 1106.
We have also compared the signatures to the note sued upon with that of defendant to the bank card and with the admitted signatures to the notarial acts, and we are impressed with the similarity of all of these signatures.
As the court said in Teutonia Bank v. Heaslip, 138 La. 860, 70 South. 861:
"The signature on a note, which signature is denied, will be examined and compared by the court- with other admitted signatures of the alleged signer, which were offered in evidence.”
The plaintiff has proven his case, in our opinion, with legal certainty.
We therefore conclude that the judgment of the lower court dismissing plaintiff’s suit is erroneous.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and it is now ordered that there be judgment in favor of plaintiff, Eixhriam Rosenberg, against defendant, Henry J. Robbert, in the sum of $4,500, together *566 with interest after date at the rate of 7 per cent, per annum until paid, and 10 per cent, on the amount of the note as attorney’s fees, and all costs of suit.
Rehearing refused by Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.