## WHITE SYSTEM OF SHREVEPORT v. THEUS et al.

### No. 5626.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Rehearing Denied June 1, 1938.

Barnette & Barnette, of Shreveport, for appellant.

J. F. Phillips, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff, as holder and owner of a promissory note for $150, less a credit of $12.50, signed by defendant B. P. Theus, and purportedly signed by the other defendants, J. A. Dean, J. D. White and J. E. Parnell, as principals, instituted this suit against all of said signers and prays for judgment against them in solido. Theus admits execution of the note. His co-defendants specially deny that they signed it. Therefore, only one issue is tendered by the pleadings, viz., the genuineness of the signatures of Dean, White and Parnell. The court a quo sustained their defense and gave judgment against Theus only. Plaintiff prosecutes appeal.

The note sued on was delivered to plaintiff by Theus on December 31, 1936, with all signatures thereon. It is on the regular form used by plaintiff in the business of making small loans. By its terms, payments of $12.50 per month were to be made until the obligation was wholly discharged. The proceeds of the note, after deducting a balance of $30 due on an older note of Theus, were handed to him. The signatures of all defendants, except Theus, were affixed to the note out of the presence of plaintiff's representatives. When it was tendered for negotiation, they assumed all signatures thereon to be genuine and closed the transaction on this basis. They were not disillusioned until Theus defaulted in monthly payments, and the other makers were notified of this fact. Several days after first viewing the note, Dean, White and Parnell executed an affidavit before a notary public, in which they swore that neither of them signed it. According to Theus' testimony, Dean, White and Parnell signed the note at his request separate and apart from each other. As to whether their signatures are genuine, the testimony of each, individually, is arrayed against that of Theus. We shall have to consider and discuss the evidence pertinent to the defense of each of these three defendants separately.

After being notified of Theus' default in his payments, the other defendants, separately, went to plaintiff's office in the City of Shreveport, to inspect the note. White instantly declared his signature to be a forgery. Parnell remarked that, "if it is not mine, it looks an awful lot like it". Dean was not certain that his signature was genuine. He was dubious about it. Thereafter, they evidently counseled over the matter and decided to take the position that neither signed the note. The affidavit, above mentioned, was then executed and delivered to plaintiff's representative.

■ After a close study of the evidence and giving due credit to all the relevant circumstances, we have reached the conclusion that Parnell signed the note. He admits that Theus solicited and secured his signature to a note Theus said was for $75 in plaintiff's favor about Christmas, 1936, or a few days thereafter. (The note sued on is dated December 31, 1936.) He admits he did not read the note, but accepted Theus' representations about it. He really did not know the amount of it. He is positive, however, Theus told him it was in plaintiff's favor and recalled that it was a large note (in size) and on white paper. Evidently the note sued on is the one presented to him for signing. As to the color of the paper, he is doubtless in error. Plaintiff's note forms are invariably on yellow paper, such as was sued on. Parnell had known Theus all his life and was on very friendly terms with his family. Theus advanced a "hard luck" story to him, and he could not resist his importuning. These undisputed facts disclose that for the usual reason men endorse each other's notes for accommodation, viz., friendship, Parnell was willing to lend his endorsement to Theus, and did so. Whether he was asked to endorse for $75 or $125, we do not think would have made any difference. If he had sufficient confidence in Theus' moral obligation to go his security for $75 he would not likely have balked at $125. If Theus imposed upon him as to the amount of the note, loss to him, resulting from his error and imprudence, cannot be visited upon plaintiff who acted in entire good faith in the whole transaction. The fact that he first hesitated to deny his signature, but admitted it "looked a lot like" his own, is a strong circumstance against him. And the additional fact that before signing the affidavit with his co-defendants, he expressed a willingness to pay or otherwise adjust one-third of the note, to be relieved from further liability thereon, belies a consciousness of non-liability. His proposition was acceptable to plaintiff, provided the other two-thirds would be in like manner arranged.

There are in the record three different specimens of Parnell's genuine signature,— one to his answer, one on the affidavit, and one written at request of counsel when on the witness stand. The structure of the letters of the signature on the affidavit differs in appearance in several respects from that of the other two specimens. These other two are very much alike in all respects and each bears marked resemblance to that on the note. Especially does the signature on the note and that to the answer in the case bear close resemblance. The peculiarities of letter formation, always present in a genuine signature, in each of these two signatures is quite noticeable, even to an eye unskilled in such matters. We entertain no doubt that the same hand wrote each.

■ If a defendant, sued on a private instrument, purporting to bear his signa-

ture, denies under oath the genuineness of such signature, the burden devolves upon the plaintiff to establish the verity of the signature. Code of Practice, article 325, on this subject, reads as follows:

"If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.

"But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code."

Article 2245 of the Revised Civil Code, which is pertinent, reads:

"If the party disavow the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases."

▮ No effort was made by plaintiff to prove the verity of Parnell's signature on the note by experts; nor by comparison other than to the extent above mentioned. However, the court or jury is never bound to accept the testimony of handwriting experts in such a case, but may follow their own opinions formed by their own comparison. Anent this question, the court in Temple v. Smith, 7 La.Ann. 562, lays down the rule in the following language:

"The testimony of experts, sworn to give evidence upon the comparison of signatures, should be considered, and acted upon with much caution by a jury, who are not bound to surrender their own opinions, formed by their own comparison, to the opinions of witnesses, however experienced."

This holding was affirmed in Sciortino v. Bank of White Castle, 127 La. 215, 53 So. 528.

▪▮ And where testimony is admitted without objection, as is the case here, other than that of experts or comparison of signatures, proving or tending to prove the genuineness of the disavowed signature, such testimony is entitled to be and should be weighed and considered in arriving at a decision on the issue.

In O'Reilly v. Irwin et al., 143 La. 81, 84, 78 So. 245, 246, it was said and held that:

"* * * and, whatever may be the proper interpretation of C.P. art. 325, as construed with C.C. art. 2245, we are of opinion that testimony showing the acknowledgment of an alleged forged signature, when admitted without objection, is to be given the effect to which it would be entitled in any other case, where an acknowledgment is relied on. Chaffe v. Cupp, 5 La.Ann. 684."

▮ Pertinent to Parnell's failure to disavow his signature when the note was shown him in plaintiff's office, and also to his own admission that from that time until he signed the affidavit denying his signature, a period of many days, he did not tell Theus, though they discussed the note one or more times, that he denied signing it, we quote the following from Rosenberg v. Robbert, 155 La. 557, 99 So. 447, 448:

"Defendant attempted to explain his failure to advise plaintiff's counsel that the note was a forgery, by stating: 'I informed my attorneys that it was a forgery.'

"This explanation does not appear to us satisfactory, as any reasonable man would, as a matter of self-interest, brand a note as a forgery, if it were so, as soon as it was presented to him, and especially would a reasonable man do so in the office of an attorney at law in the possession of the note, and who would in all probability bring suit against him as the maker of the note for its collection. Silence, under such circumstances, strongly indicates that the note in question was not a forgery, for self-interest naturally dictates self-protection at all times."

▮ We are of the opinion that plaintiff has successfully discharged the burden of proof resting upon it by competent evidence, as regards Parnell.

▮ Dean is positive he did not sign the note. He testified that near Christmas, 1936, he did endorse a note for Theus for $50 in favor of the Commercial National Bank in Shreveport, which was not negotiated, and gives as excuse for so doing that he knew the bank would not loan on his signature. At no time did he suggest any proposition of settlement with plaintiff and, save for the uncertainty he evinced when he first saw the note in plaintiff's office, after Theus' default, has invariably disavowed the signature. The signature of this defendant to his answer and on the affidavit delivered to plaintiff are quite dissimilar to that on the note;

so much so that we feel morally certain, from a comparison, that two different hands wrote them. Other circumstances in the case strengthen this conclusion.

And what we have said concerning Dean's signature applies with equal force to White's, except, from the beginning, he positively denounced the signature on the note as not being his own, and so informed Theus several times.

As to Dean and White, the proof submitted by plaintiff is not sufficiently strong to warrant a judgment against them.

For the reasons herein assigned, it is ordered, adjudged and decreed that plaintiff, the White System of Shreveport, Inc., do now have and recover judgment against defendants B. P. Theus and J. E. Parnell, in solido, for the sum of $112.50 with legal interest thereon from January 31, 1937, until paid, and for twenty per cent of said amounts, principal and interest, additional as attorney's fees. And, except as amended by this decree, the judgment appealed from is affirmed with costs.

DREW, J., concurs.

HAMITER, Judge, dissents for following reasons:

It is my opinion that plaintiff has not proved the genuineness of Parnell's signature with legal certainty, as was encumbent on it to do, and its demands against that defendant, as well as against the others, should be rejected. I therefore respectfully dissent from the majority opinion, and hold to the belief that the trial court's judgment should not be disturbed.