THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY T. RHODEN, Defendant-Appellant.

Third District    No. 81-177

Opinion filed October 20, 1981.

Robert Agostinelli and Bonita L. Welch, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Larry Rhoden, appeals from his conviction for burglary following a jury trial in the Circuit Court of Rock Island County. The issues presented for review are (1) whether the circuit court deprived the defendant of his sixth and fourteenth amendment rights to be present during trial and to be represented by counsel when, without either the defendant or his counsel being present, the court received and responded to a written request made by the jury during its deliberations, and (2) whether the court erred in admitting the testimony of Sandra Stein, whom the prosecution claimed to be qualified as an expert witness in fingerprint comparison.

On the morning of April 28, 1980, the police responded to an alleged burglary at the residence located at 603 44th Street, Rock Island, Illinois. Upon arriving, they learned from the owner, Sheri Chilberg, that someone had broken into her house during the night and had removed her television set and stereo equipment. The burglar appeared to have entered through the kitchen door by breaking a pane of glass from the door and releasing the door latch. During their investigation, the police successfully recovered several latent fingerprints from the area of the door surrounding the broken pane. On October 23, 1980, the defendant was arrested and charged with burglary. At that time the police made a full set of impressions of the defendant's fingerprints. At trial the prosecution attempted to demonstrate that the fingerprints recovered from the scene of the burglary matched the defendant's fingerprints, thus establishing inferentially that the defendant committed the burglary. The prosecution called Sandra Stein, a Rock Island Police Department evidence technician, to testify in this regard.

She stated she had approximately 2 years' fingerprinting experience and had made "thousands" of fingerprint comparisons, although the

instant trial was only the second time she had testified as an expert witness. Her formal training in fingerprint comparison included a 1-week course conducted by the F.B.I. in Springfield and a 3-week course at the F.B.I. headquarters in Quantico, Virginia. Stein had attended both courses in 1980. She admitted she had not been certified by the International Association of Identification for the reason that she had not yet acquired 3 years' experience in fingerprinting, a requirement for certification. She added, however, that she was aware of persons employed with the F.B.I. for almost 15 years who had not been so certified.

She first identified a single fingerprint and a set of four fingerprints recovered from the scene of the breakin and marked as exhibits Nos. 1 and 2. Then, by using enlarged photographs of exhibit No. 1 and the defendant's left thumbprint, Stein indicated 10 points of similarity between that exhibit and the defendant's thumbprint. The 10 points were each marked by corresponding arrows on both enlargements. Although she admitted there was some disagreement among experts on the issue of how many points of similarity are necessary to make a valid identification, she submitted that 10 points were more than sufficient to conclude conclusively that the fingerprint labeled exhibit No. 1 was the defendant's left thumbprint. Referring then to exhibit No. 2, Stein said she had discovered between 5 to 10 points of similarity between each of the four fingerprints and the defendant's fingerprints, but she had failed either to chart the similarities using enlarged photographs, as she had done with exhibit No. 1, or to make notes on where the points of similarity could be located. Further, she could not recall the points' locations. Stein said she believed that charting the similarities between the fingerprints contained in exhibit No. 2 and the defendant's fingerprints was unnecessary because of her comparison made between exhibit No. 1 and the defendant's left thumbprint. Over the defendant's objection, the court admitted both exhibits as well as the enlarged photographs containing the ten charted points of similarity.

The only evidence adduced by the defendant consisted of his parents' testimony. They stated that the defendant was in Milwaukee caring for his grandmother on the date of the burglary.

During its deliberations, the jury submitted a handwritten note to the trial judge, requesting a magnifying glass. Without either the defendant or defense counsel being present and without notifying them, the judge sent the following written response, "None available." The jury subsequently returned a guilty verdict against the defendant for burglary.

■■ The defendant argues that he was denied his constitutional right to be present in the courtroom when the trial judge communicated with the jury during its deliberations. Before proceeding to the primary issue, we first reject the State's contention that, by failing to assert the claimed sixth

amendment violation in his post-trial motion, the defendant waived consideration of the issue for the purposes of appeal. To hold that the defendant must raise in his motion for post-trial relief the alleged constitutional error which transpired without his presence or knowledge would effectively preclude a reviewing court from considering such violations for the obvious reason that, in all likelihood, the defendant would have no knowledge that the communication occurred.

■■■ It has long been axiomatic that a defendant is entitled to a public trial by jury, every part of which he has a right to participate and to be present, from arraignment to final sentencing. (*People v. Etheridge* (1976), 35 Ill. App. 3d 981, 343 N.E.2d 55.) In this regard the law is well established that any judgment based upon a communication between the court and jury after their retirement to deliberate, unless made in open court, violates this right. (*Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468; *Jenkins v. United States* (1965), 380 U.S. 445, 13 L. Ed. 2d 957, 85 S. Ct. 1059; *People v. Beck* (1922), 305 Ill. 593, 137 N.E. 454.) Hence, in the instant case the court committed error by responding to the jury's request for a magnifying glass without the defendant or his counsel being present. The law is equally well established, however, that such an unconstitutional communication is not deemed conclusively prejudicial. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) Because the actual effect of the communication on the jury is difficult to establish, the standard applied is whether the illegal conduct involved " 'such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process.' " *People v. Tobe* (1971), 49 Ill. 2d 538, 544, 276 N.E.2d 294, 298, citing *Estes v. Texas* (1965), 381 U.S. 532, 542-43, 14 L. Ed. 2d 543, 550, 85 S. Ct. 1628, 1633.

■ In the instant case, the communication did not prejudice the defendant because, assuming the defendant and his counsel had been present during the court's response that no magnifying glass was available for the jury's use, that response was the only appropriate reply for the court to have made. Although authority exists which may condone the jury's use of a magnifying glass in examination of exhibits (see *Howard v. Illinois Trust & Savings Bank* (1901), 189 Ill. 568, 59 N.E. 1106), recent case law establishes that the refusal to permit examination of fingerprint exhibits under magnification does not result in error. The classification and method of comparison of fingerprints is a science requiring specialized study not common to most. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.) Accordingly, the jury must be assisted by the testimony of experts in the field of fingerprint identification and comparison. Although the jury may reject the expert's testimony and conclusions on the basis of his or her lack of credibility or on the basis of testimony developed on cross-examination, it may not exercise the unlimited

prerogative to speculate as to the presence or absence of points of similarity in fingerprint exhibits. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398.) For this reason the jury is not entitled to a magnifying glass, thus making the court's denial of the jury's request proper and nonprejudicial to the defendant's sixth amendment right to be present during all proceedings.

The defendant secondly contends that the court erred in admitting the testimony of Sandra Stein, the prosecution's evidence technician, claiming she was unqualified to testify as an expert and to offer her opinion concerning the fingerprint comparisons. The defendant suggests that the recent case of *People v. Rhodes* (1981), 85 Ill. 2d 241, 422 N.E.2d 605, established minimum qualifications necessary to be considered an expert in fingerprint identification and comparison. We disagree with this interpretation. *Rhodes* contains no language suggesting that the expert's substantial qualifications there were to be considered an absolute minimum, thus preempting the trial judge's traditional discretion concerning the qualification of an expert witness.

■■ The comparison of fingerprints involves the exercise of scientific knowledge which assists the jury in its determination of the facts. (*People v. Jennings* (1911), 252 Ill. 534, 96 N.E. 1077.) This scientific data is supplied by the introduction of an opinion of an expert witness. The party offering the expert assumes the burden of establishing that expert's scientific knowledge, the sufficiency of which rests largely on the sound discretion of the trial judge. Irrespective of how the specialized knowledge was acquired, whether through education, training, experience, or a combination of each, if the witness possesses such knowledge, then he or she may testify by opinion or otherwise. E. Cleary & M. Graham, Handbook of Illinois Evidence §702.2 (3d ed. 1979).

■■ In the instant case, Stein testified that she had 2 years' experience in which she had made "thousands" of fingerprint comparisons. In 1980 she also had completed two courses specializing in fingerprint comparison. We can assume from these recent courses that she was familiar with current literature in her area of concentration. Moreover, her failure to be certified by the International Association of Identification did not conclusively disqualify her from testifying as an expert. In any event, the jury was aware of this and considered it in weighing Stein's credibility. Although Stein clearly did not garner the qualifications of the experts who testified in *Jennings* (three experts who averaged 6 years' experience) or in *Rhodes* (5 years' experience in addition to 50 hours of in-service training), she was sufficiently experienced and trained to serve as an expert witness and to state her opinions concerning the similarity between the defendant's fingerprints and the fingerprints recovered at the scene of the crime. By permitting Stein to testify as an expert witness, the court committed no abuse of its discretion.

For the foregoing reasons, we affirm the defendant's conviction for burglary entered in the Circuit Court of Rock Island County.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.