THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEON PALMER, Defendant-Appellant.

Fourth District   No. 4—88—0294

Opinion filed March 31, 1989.

Gregory L. Barnes, of Brinkoetter & Barnes, P.C., of Decatur, for appellant.

Larry R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The defendant, Leon Palmer, appeals from his conviction for residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) following a jury trial in the circuit court of Macon County. Thereafter, he was sentenced to a term of 20 years' imprisonment. The issues presented for review are (1) whether the in-court identification of the defendant by the victim had an origin independent of a prior improper identification; (2) whether the trial court properly refused to permit exhibits depicting fingerprint evidence to go to the jury room; and (3) whether defendant was proved guilty beyond a reasonable doubt. We affirm.

On November 5, 1987, defendant was charged by information with the offense of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3). The information alleged that on May 5, 1987, defendant knowingly and without authority entered the dwelling place of Verna King with the intent to commit a theft therein.

On November 16, 1987, defendant was ordered to stand in a lineup for pretrial identification. (107 Ill. 2d R. 413(a)(i).) Defense counsel was present during the actual lineup, but was denied access to the room where the victim, Mrs. King, identified defendant from a Polaroid photograph of the lineup. The actual identification by King was unrecorded and witnessed only by Officer Vernol Bond. The trial court granted defendant's motion to suppress the lineup identification, because the court opined defense counsel was excluded at a crit-

ical point in the identification process. Prior to the jury trial on February 18, 1988, defendant filed a motion *in limine* requesting the court to prohibit the in-court identification of defendant by King. He alleged her in-court identification would be tainted by the improper pretrial identification procedure. The parties engaged in an offer of proof on the issue and the following testimony was heard.

The victim, King, testified she was 89 years old on May 5, 1987. At around nine that night, she was reading in the dining room of her home located at 1290 West Macon, Decatur, when she heard a very loud bump followed by the clatter of broken glass. When King went to investigate, she met an intruder at the entrance to her living room. The man grabbed her by her forearms, took her back to the dining room and demanded money. A 25-watt night-light illuminated the doorway dividing the living and dining areas. After King emptied her wallet, she watched while the intruder unhooked her portable television set. As he exited, the man told her to remain seated. King described the intruder as a clean shaven black man in his early thirties, about 5 feet 7 inches or 5 feet 8 inches in height and weighing around 175 pounds. King identified defendant in court as the man who broke into her home, although she admitted she was not 100% certain.

On cross-examination, the witness indicated that immediately after the incident she had told the police the intruder was between 5 feet 10 inches and 6 feet tall and in his late twenties. She acknowledged her inability to identify defendant from a photo array displayed to her by the police on October 18, 1987.

Patrolman Steven Jostes testified that immediately after the incident King described the intruder as a black male between 5 feet 10 inches and 6 feet tall, weighing between 175 and 200 pounds, with short hair and a clean shave. Jostes indicated King did not hesitate in making her description and was "amazingly calm and very sure about what she was telling me."

Detective Vernol Bond testified he arranged a lineup on November 16, 1987, of five black men, which included defendant. After King viewed the lineup, Bond showed her a Polaroid photograph of the same. Defense counsel was denied access to the private showing of the photograph when King identified the defendant. Bond indicated the identification was made within seconds and without hesitation. He denied telling King which man to point out. On cross-examination, Bond testified he was aware King failed to identify defendant from a group of photographs she viewed soon after the incident.

After arguments of counsel, the trial court determined any in-

court identification by the victim would be independent of the improper pretrial identification; thus, the court declared King would be allowed to identify defendant before the jury.

At trial, King and Officers Bond and Jostes repeated their prior testimony. In addition, Officers Bond and George Lebo testified to the location and lifting of latent fingerprints found at King's residence immediately after the burglary. The trial court allowed Officer Lebo to testify as an expert in the field of fingerprint identification. An objection by the defense to his qualifications was overruled. Officer Lebo explained how latent prints are collected and compared to known prints of a suspect. Lebo testified a latent print collected from the crime scene was identical to the left palm print of the defendant.

Over defendant's objection, the trial court allowed the State's motion to prohibit the jury from examining the exhibits depicting defendant's known palm print and the latent print during deliberations. During deliberations, the jury specifically requested to see the exhibits, but the court refused. The jury found defendant guilty as charged, and the trial court sentenced him to 20 years' imprisonment.

■■ ■ First, we discuss the propriety of the in-court identification of defendant by King, which occurred in the wake of an improper pretrial identification. Cases such as this are properly decided by applying the principles articulated by the Supreme Court in *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. Our supreme court in *People v. Curtis* (1986), 113 Ill. 2d 136, 497 N.E.2d 1004, *cert. denied* (1987), 481 U.S. 1014, 95 L. Ed. 2d 497, 107 S. Ct. 1890, described what is known as the *Wade-Gilbert* exclusionary rule as follows:

"Once it has been determined *** that a lineup violates the sixth amendment right to counsel, any evidence adduced by the prosecution that a witness identified the defendant at the lineup is subject to a *per se* rule of exclusion. [Citations.] However, an *in-court* identification may be permitted even when it follows an uncounseled lineup if the State can establish by 'clear and convincing evidence that the in-court identification[ ] [was] based upon observations of the suspect other than the lineup identification.' (*United States v. Wade* (1967), 388 U.S. 218, 240, 18 L. Ed. 2d 1149, 1164, 87 S. Ct. 1926, 1939; [citations].) If either a lineup or an in-court identification is improperly admitted, a new trial is required unless the State can

prove that the error was harmless. [Citation.]" (Emphasis in original.) *Curtis*, 113 Ill. 2d at 143-44, 497 N.E.2d at 1007.

Here the defendant did not contend the lineup was unfairly conducted. Instead, he argued the pretrial lineup and identification evidence was inadmissible because defense counsel was denied access to the actual identification process. Relying on *People v. McDonald* (1974), 23 Ill. App. 3d 86, 318 N.E.2d 489, the trial court agreed and ordered the lineup and identification suppressed. In *McDonald*, the Second District Appellate Court held that *Wade* and *Gilbert* require the presence of defense counsel at the lineup and "at the identification, if any, of the defendant by the complaining witness." *McDonald*, 23 Ill. App. 3d at 91, 318 N.E.2d at 492.

■ On appeal, defendant argues the in-court identification of defendant by King was not independent of the improper pretrial identification procedure. *Wade* provides several factors for the court to consider when deciding such an issue:

> "[T]he prior opportunity [of the witness] to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *Wade*, 388 U.S. at 241, 18 L. Ed. 2d at 1165, 87 S. Ct. at 1940.

■ In *Curtis*, our supreme court noted the "independent—basis determination" enunciated in *Wade* "can be made by a reviewing court where the record permits an informed judgment [citations], and the court may find a sufficient alternative foundation for the in-court identification 'even where a small number of these factors are present.' (*United States v. Anderson* (7th Cir. 1983), 714 F.2d 684, 686.)" (*Curtis*, 113 Ill. 2d at 147, 497 N.E.2d at 1009.) From the record before us, and after balancing the *Wade* factors, we are convinced King's in-court identification of defendant as the man who robbed her house on May 5, 1987, was based on her observations during the robbery rather than during the pretrial identification session.

First, King had ample opportunity to observe the robber. The evidence showed the victim was awake and reading in her dining room when she heard the sound of breaking glass. She met the intruder face-to-face at the entrance to her living room. A night-light with a 25-watt bulb illuminated the area. The robber grabbed King by the

arms and backed her up into the dining room. Although King was not eye-to-eye with the robber because of their difference in height, she had a clear view of him while he relieved her of her cash and unhooked her portable television set.

Next, the description of the robber, which King gave to the police, was relatively similar to defendant's actual description. King initially described the robber as a clean-shaven black male in his late twenties between 5 feet 10 inches and 6 feet tall, weighing between 175 and 200 pounds. At trial nine months later, King testified she remembered the robber was 5 feet 7 inches or 5 feet 8 inches, weighing about 175 pounds and in his late twenties or early thirties. Defendant testified that on May 5, 1987, the day of the robbery, he was 6 feet tall and weighed between 210 and 215 pounds. However, according to the booking report compiled on November 4, 1987, defendant was 5 feet 11 inches in height and weighed 185 pounds. To avoid the possibility defendant's testimony was self-serving, we declare the booking report the more reliable source of defendant's actual description. Although King's in-court description of the robber varied substantially from her prelineup description, it is the latter information that is listed as a *Wade* factor. No substantial discrepancy existed between the description King gave the police and defendant's actual description contained in the police records.

The remaining *Wade* factors address any identification by the witness of the defendant prior to the lineup procedure. In this case, King failed to make a pretrial identification of anyone, including defendant, from a photographic lineup. On October 18, 1987, an officer showed King five photographs, one of which depicted defendant. King was unable to identify the robber from the photo array. The officer testified at trial that the photograph of defendant was a couple of years old and revealed only his upper torso. Further examination of the record and the actual photograph reveals it was taken on July 13, 1984, three years prior to the robbery. The photograph represents the front and side view of defendant from the waist up. In this photograph defendant appears to be approximately 6 feet 5 inches in height and his weight is undeterminable.

In *Curtis*, there was some dispute as to whether the witness was able to identify the defendant's picture from a photo array of possible subjects. The witness did not identify anyone else in the array. The picture of the defendant included in the array was taken four years before the robbery and was blurred. The court held that "[i]n light of the conflicting evidence and the defects of the photograph used, the prelineup identification factors neither favor nor negate the

independence of the in-court identification in Curtis' case." (*Curtis*, 113 Ill. 2d at 150, 497 N.E.2d at 1010.) As did the supreme court in *Curtis*, we believe the age of the photograph presented to King pre-lineup, in addition to its other limitations, neither enhances nor diminishes the independence of the in-court identification. The fact King was unable to identify the defendant soon after the incident from the photo array is entitled to some weight, but it becomes less significant when balanced with the age of the photograph, King's failure to identify any other possible subjects, her excellent opportunity to observe the crime, and the accuracy of her initial description of the suspect.

The final *Wade* factor is insignificant in this case since the lineup was held only six months after the robbery.

In deciding whether to allow an in-court identification by King, the trial court considered the witness' degree of attention in addition to all of the above *Wade* factors. (*People v. Bryant* (1983), 94 Ill. 2d 514, 520-21, 447 N.E.2d 301, 304; *People v. Williams* (1987), 118 Ill. 2d 407, 413, 515 N.E.2d 1230, 1233.) The court commented on its observations of King when it said: "Granted, she is ninety years of age. She is alert, she is spontaneous to questions, she is not confused by any of the questions put to her by the prosecution or by the defense. I believe her attention span is as good, or maybe even better, than ours. She is quite obviously a lady of attention." The court also commented King's level of certainty that defendant was the man who robbed her home on May 5, 1987, had not waivered since she initially identified him on November 16, 1987.

■ We conclude the trial court properly allowed the in-court identification of defendant by King in this case. The identification was the result of observations made during the robbery and not based on her recollection of the pretrial lineup and identification.

Next, defendant argues the trial court erred in refusing to permit the jury to examine the actual and latent palm print exhibits during deliberations. Defendant contends that since Officer Lebo used only his naked eye to compare the print evidence, the jury could have done the same. We disagree.

■ The trial court has considerable discretion in determining what exhibits should be viewed by the jury during deliberations (*People v. Gonzales* (1979), 79 Ill. App. 3d 498, 398 N.E.2d 647), and this decision will not be reversed on appeal unless there was an abuse of discretion prejudicial to the defendant. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818.) A noted text on Illinois evidentiary rules states "[w]here the tangible exhibit requires expert interpretation

and exposition, the court should generally refuse to permit the exhibit to go to the jury room." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §403.4, at 156 (4th ed. 1984).

■ In *People v. Rhoden* (1981), 101 Ill. App. 3d 223, 427 N.E.2d 1292, the Third District Appellate Court affirmed the decision of the trial court denying the jury's request for a magnifying glass to examine the fingerprint exhibits in the jury room. The court discussed how fingerprint evidence is to be viewed by the jury:

> "The classification and method of comparison of fingerprints is a science requiring specialized study not common to most. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.) Accordingly, the jury must be assisted by the testimony of experts in the field of fingerprint identification and comparison. Although the jury may reject the expert's testimony and conclusions on the basis of his or her lack of credibility or on the basis of testimony developed on cross-examination, it may not exercise the unlimited prerogative to speculate as to the presence or absence of points of similarity in fingerprint exhibits. (*People v. Peter* (1973), 55 Ill. 2d 443, 308 N.E.2d 398.)" *Rhoden*, 101 Ill. App. 3d at 226-27, 427 N.E.2d at 1294.

■ The sole question in *Rhoden* was the propriety of the trial court's denial of a magnifying glass to the jury and not, as here, whether or not the jury should have had possession of the exhibits. The language of the opinion suggests the nature of fingerprint evidence is such that a jury should not be allowed to assume the role of an expert during deliberations. Accordingly, the court determined the jury was not entitled to a magnifying glass to examine the fingerprint evidence. For the same reasons, we conclude the trial court in this case properly refused the jury's request to examine the prints. The comparison of fingerprint evidence requires expert opinion and scientific knowledge. (*Rhoden*, 101 Ill. App. 3d at 227, 427 N.E.2d at 1295.) A jury is not qualified to engage in such analysis, but might be tempted to do so if it had before it the print evidence during deliberations. We find the denial by the trial court of the jury's request of the exhibits, which would have allowed them such a comparison, was well reasoned and nonprejudicial to the defendant.

■ Finally, defendant argues he was not proved guilty beyond a reasonable doubt when the identification by the victim was "vague, doubtful and variable in its terms" and the only other evidence of guilt was circumstantial. Again, we disagree.

We have already discussed the facts establishing King's identification was reliable, which included her opportunity to view the criminal

act, her degree of attention, and level of certainty. In addition to the proper and reliable in-court identification of defendant, we find the circumstantial evidence of defendant's palm print at the scene of the crime is inconsistent with any reasonable hypothesis of innocence and thus is sufficient to support the conviction. *People v. Rhodes* (1981), 85 Ill. 2d 241, 422 N.E.2d 605.

The judgment of the circuit court of Macon County is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.