THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BURNIE W. REYNOLDS, Defendant-Appellant.

(No. 53597; )

First District—December 30, 1970.

122

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael J. Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant Burnie W. Reynolds was convicted by a jury of the crime of armed robbery and sentenced by the court to the penitentiary for 8 to 25 years. On appeal defendant contends that he was denied his constitutional right to counsel prior to a lineup identification; that the identification procedures were violative of due process; that the trial court erroneously denied his motion to suppress certain evidence; and that he was not proved guilty of the crime beyond a reasonable doubt. The trial court conducted hearings on defendant's motions to suppress certain physical evidence and identification testimony, and denied both motions. The facts adduced at trial are as follows.

A tavern was robbed in the early morning hours of January 25, 1968 by an armed man. Three men, the owner, bartender and porter, identified defendant as perpetrator of the crime. They testified that sometime before their normal closing hour defendant entered and ordered a beer. At closing time the owner asked all the customers to leave, but defendant asked if he could use the washroom before he left. When he came out of the washroom, he pulled a gun and forced the owner to put all the cash in a bag. The porter ran into the kitchen, but defendant threatened to kill the owner unless he returned. Defendant tied up the bartender and porter, and forced the owner to accompany him in the owner's car. They drove three blocks, and then the robber tied him up in the car and fled. The owner testified that the defendant was in the tavern over an hour; the porter, who arrived in the tavern after the assailant, testified that he had about one half hour to observe the robber; the bartender testified that he served a beer to defendant, and noticed him move from one seat to another prior to the robbery. The tavern had fluorescent lighting, and there were lights in the kitchen. The victims informed the police that the robber was above 23 years old, 5'10" tall, was slender,

wore a dark coat and sunglasses, and was hatless. On February 7, 1968, the police arrested defendant. He was carrying a loaded revolver and sunglasses which the victims stated were similar to those used by the robber. The police officer and three victims testified that defendant, who had a mustache at the time of trial, did not have one at the time of the robbery or arrest.

Defendant first contends that he was denied his constitutional right to counsel at the lineup. In making this argument, he relies on *United States v. Wade* (1967), 388 U.S. 218, wherein the United States Supreme Court ruled that a lineup is a critical stage in the proceedings and that defendant was entitled to the presence of counsel.

At a pretrial hearing on his motion to suppress identification testimony, defendant testified that after his arrest he was informed of his constitutional rights, including his right to counsel. He responded by stating that he wanted an attorney, and the police officer asked which attorney he wanted. Defendant replied by asking for the business cards of various lawyers contained in his wallet seized by the police. Defendant further testified that the police officer denied him access to his wallet or cards, stating that they were evidence. Defendant testified that he was then placed in a lineup without counsel. At the same hearing, Officer Phelan testified that he was present at the time defendant was informed of his rights, including the right to counsel. The police officer stated that defendant did not request the assistance of counsel.

■■ It is so well settled as not to require citation of authority that the determination of truth in any debatable set of circumstances is peculiarly for the trier of fact, and it is not for the reviewing court to substitute its opinion for that determination. Here the testimony was conflicting as to whether defendant requested counsel prior to the lineup. The trial judge believed the police officer's testimony that defendant made no such request, and we will not disturb that finding. Moreover if the trial judge found that defendant had in fact made a request for counsel prior to lineup, the result would not be different. Our Illinois Supreme Court has held that the rule enunciated in the *Wade* case applies only to post-indictment confrontations, and also that a pre-indictment lineup is not a critical stage of the proceedings to which a defendant has the right to the presence of counsel. *People v. Palmer* (1969), 41 Ill.2d 571, 244 N.E.2d 173.

Defendant, relying on *Stovall v. Denno* (1967), 388 U.S. 293, next contends that the identification procedures employed by the police were so highly suggestive as to deprive him of due process and to render the in-court identifications inadmissible against him.

At the hearing on his motion to suppress the identification testimony,

defendant testified that shortly after his arrest a lineup was conducted at the police station. In the lineup of five men he was the tallest, and there was only one other who had dark hair. He also stated that he was the only one who wore a hat, and that he was instructed by the police to bring his hat to the lineup. Each man in the lineup gave his name, address and occupation, and then stepped back.

Officer Phelan testified at the hearing that all the men in the lineup were dressed similarly to defendant and were similar in height and build. None wore hats. The other four men were police officers. Bruno Stefanelli, the tavern owner, testified at the hearing that defendant was in his tavern over an hour and fifteen minutes. He identified defendant as the robber at the lineup. All of the men in the lineup were about the same size. Defendant had a hat, but Stefanelli was not sure if he wore it at the lineup. George Weyma, the bartender, testified at the hearing that he was not at the lineup, and had not seen the robber since the crime. He then made an in-court identification of defendant. Joseph Prarat, the tavern porter, was not present at the pretrial hearing, but before testifying at trial, he testified outside the presence of the jury on defendant's motion to suppress the identification testimony. Prarat testified that he did not attend the lineup with Stefanelli, but went to the police sation on February 28, 1968. The police showed him pictures of three different men; one picture was of defendant and he identified it. The police said they had the man, and he was brought out. Prarat also testified that during the robbery all the tavern lights were on, including the ones in the kitchen. Prarat stated that he observed defendant for about 25 to 35 minutes during the robbery and had two conversations with him before and during the robbery. The trial judge denied the motion to suppress the identification testimony.

■■ A viewing of defendant by a victim of a crime may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny him due process of law. (*People v. Lee* (1969), 44 Ill.2d 161, 254 N.E.2d 469.) However the burden is on defendant to show that the confrontation was so wanting in fairness as to be violative of due process. *People v. Blumenshine* (1969), 42 Ill.2d 508, 250 N.E.2d 152.

■■ We first concern ourselves with the police station lineup involving the tavern owner. Since the testimony of the owner and police officer was believed by the trial judge, we must conclude that there was nothing unnecessarily suggestive about that confrontation. Five men, all of the same approximate height and build, and all dressed similarly, were shown to the tavern owner without any prior suggestions on the part of the police. In this court, defendant attempts to argue that, since the other four men in the lineup were police officers, they would have to so an-

nounce when asked their occupation during the lineup. The simple answer to that claim is that it was not raised by defendant in the trial court, and obviously did not occur. Even were we to find that lineup tainted, it is well settled that where the record indicates that the witnesses in-court identifications of defendant were based on observation independent of and uninfluenced by the improper identification confrontation, that in-court identification is admissible. (*People v. Nelson* (1968), 40 Ill.2d 146, 238 N.E.2d 378.) Clearly the State established a prior independent and uninfluenced source for the tavern owner's in-court identification of defendant. The owner viewed the robber for over an hour in the tavern, and also had conversations with him both before and during the robbery. Further he was forced to accompany the robber after the robbery, and then was tied by his assailant. The trial judge properly denied defendant's motion to suppress the tavern owner's identification testimony.

■■ While the record is not clear as to whether the tavern porter actually confronted defendant in his appearance at the police station, it is evident that he also had a prior independent and uninfluenced opportunity to observe the robber. Although the porter arrived for work after the robber entered the tavern, he viewed the robber for approximately thirty minutes. The porter also had two conversations with the robber before being bound. He further testified that all the lights were on, including those in the kitchen. Thus his in-court identification of defendant was properly admitted into evidence.

Defendant next contends that it was reversible error to admit in evidence certain articles taken from his person at the time of his arrest, arguing that the police had no probable cause for his arrest nor any warrant.

■■ At the hearing on defendant's motion to suppress certain physical evidence, defendant testified that as he walked into a hotel lobby on February 7, 1968, he was grabbed and handcuffed by the police. They took an attache case which he was carrying, and also took his wallet and some personal effects. The attache case contained a revolver and cartridges. Defendant further testified that the police showed him no warrant nor would they tell him why he was being arrested. Officer James Phelan of the Chicago Police Department testified at the hearing that he had been directed to the hotel in question to meet a Wayne Hill. At the hotel, Hill informed the officer that he had been the victim of a robbery, and that Hill had seen the robber in the hotel. Officer Phelan with other officers waited in the lobby with Hill. When Defendant entered the lobby, Hill pointed him out as the man who had committed the robbery, and the police made the arrest. The trial judge denied defendant's motion to suppress the evidence.

The pertinent Illinois Statute provides as follows:

"A peace officer may arrest a person when:

\* \* \*

(c) He has reasonable grounds to believe that the person is committing or has committed an offense." Ill. Rev. Stat. 1969, ch. 38, par. 107—2.

An arrest without a warrant is lawful if a crime has been committed and the arresting officer has a reasonable basis for his belief that the person to be arrested has committed it. (*People v. Catavdella* (1964), 31 Ill.2d 382, 202 N.E.2d 1.) The test to be used in determining the existence of a reasonable basis for arrest is whether a reasonable and prudent man in possession of the knowledge which the officer had would believe the person arrested guilty of the offense. *People v. LaBostrie* (1958), 14 Ill.2d 617, 153 N.E.2d 570.

■■ We hold that the trial court correctly denied defendant's motion to suppress the evidence. It seems apparent to us that the arresting officer had sufficient facts upon which to base a reasonable belief that a crime had been committed by defendant. The police officer testified that Wayne Hill told him that he had been robbed, and that he had seen the man who committed the crime in the lobby of a certain hotel. Hill then waited with the officers in the lobby, and when defendant entered, pointed him out as the perpetrator. Officer Phelan was justified in relying upon the information given to him by the victim of another robbery. Consequently he had probable cause to make the arrest, and had a reasonable basis for making the arrest without a warrant. Since the arrest was lawful, it was proper to conduct a search of the person arrested. *United States v. Rabinowitz* (1950), 339 U.S. 56.

Defendant finally maintains that he was not proved guilty beyond a reasonable doubt. We cannot agree. Three witnesses, with an unusually long and excellent opportunity to view the robber, all identified defendant as the perpetrator of the crime. Nor has defendant pointed out any contradictions or discrepancies in the testimony of the State witnesses. From our view, the evidence of defendant's guilt was overwhelming.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and SCHWARTZ, J., concur.