THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN DISMUKE, (Impleaded), Defendant-Appellant.

(No. 70-114;

Second District—January 31, 1972.

Ralph Ruebner, of Elgin, Prentice H. Marshall, of Champaign and Theodore Gottfried, of Chicago, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant John Leon Dismuke and one James L. Watkins were indicted together and tried together on a charge of Armed Robbery. The defendant appeals from the judgment of conviction after a jury verdict, and from the 3-9 year sentence imposed.

Defendant first argues that the conviction should be reversed because, although he requested a lawyer, he was denied effective assistance of counsel at the July 8th, 1969, "line-up" held the day following his arrest and before indictment. He urges that the court committed constitutional error in denying his motion to suppress the testimony of the pre-trial identification by a victim.

■■■ A line-up or identification purposes is a critical stage of criminal proceedings in which there is a constitutional right to counsel. If the right is withheld, a courtroom identification of an accused, which is not shown on the record to be of independent origin, will be excluded. (*Gilbert v. California* (1967), 18 L.Ed.2d 1178, 1186; *United States v. Wade* (1967), 18 L.Ed.2d 1149, 1158-1162.) In both *Gilbert* and *Wade* the line-up was after indictment. The State argues therefore that a defendant is entitled to assistance of counsel at a line-up only after he has been indicted. It is pointed out that in *People v. Palmer* (1969), 41 Ill.2d 571, 572 (citing also *Simmons v. United States* (1968), 19 L.Ed.2d 1247), the Illinois Supreme Court interpreted *Wade* and *Gilbert* as limited to a post indictment line-up. However, in *Coleman v. Alabama* (1970), 26 L.Ed.2d 387, 396, 397, the majority characterized *Wade* and *Gilbert* as extending the right to assistance of counsel at a preliminary hearing which was a "critical stage" of Alabama criminal proceedings, and before indictment. In *People v.*

*Adams* (1970), 46 Ill.2d 200, 206, the Illinois Supreme Court, noting that the preliminary hearing in Illinois, is essentially like that in Alabama, and therefore also a "critical stage" requiring counsel under the *Coleman* rule, held that the application of the rule of *Coleman* would be prospective only.

The State takes the position that even if *Coleman* by implication requires the appointment of counsel at a pre-trial line-up, it will not be applied here in view of *People v. Adams, supra,* since the line-up occurred before the date of the *Coleman* decision. We must, however, agree with defendant that the issue is not the retroactivity of *Coleman* which dealt with preliminary hearings, but rather the prospective application of *Wade* and *Gilbert,* both of which rule upon line-ups and were decided before the line-up in which this defendant was viewed. But as relevant here, we think that *Coleman* made explicit the scope of *Wade* and *Gilbert.*[1] In the *United States v. Wade,* 18 L.Ed.2d 1149, *supra,* at pages 1158-62, the majority opinion distinguishes the line-up from various other investigatory steps preparatory to trial, where the risks are less that the absence of counsel would derogate from a fair trial and states:

"The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused, unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.'"

■■ These same considerations apply, in our view, to any pretrial line-up whether held before or after an indictment. If "that's the man" is determined out of the courtroom, we fail to see the distinction between whether the determination is made before or after the formal indictment.

■■ The State alternatively argues that defendant did have counsel. The conclusion is based on the premise that the Public Defender was present at some time during the line-up. However, the presence of the Public Defender at some undetermined time was before he was appointed to represent this defendant and there is nothing in the record to indicate that the Public Defender was acting in any capacity as defendant's counsel at the time.

We must then consider the consequences of the denial of representation at the line-up. Here the court, over objection, heard the testimony of

---

[1] *People v. Kirby,* 121 Ill.App.2d 323, 329 (1970) denies assistance of counsel in a pre-indictment "showup". The United States Supreme Court has granted certiorari limited to the issue "whether due process requires that an accused be advised of his right to counsel prior to a pre-indictment showup at a police station several hours after his arrest and forty-eight hours after the alleged crime occurred". 29 L.Ed.2d 160.

Mrs. Abolins specifically directed at her identification of the defendant at the line-up and detailing the procedures used. The court refused defendant's motion to suppress the testimony with respect to the pre-trial line-up. The court based its decision on its finding from the hearing held on the motion to suppress out of the jury's presence that the line-up was fairly conducted, and thereupon the witness testified not only to the pre-trial identification but made a positive identification of the defendant at the trial. In *Gilbert v. California,* 18 L.Ed.2d 1178, *supra,* page 1186, 1187, the Supreme Court held that the testimony of witnesses who, in addition to an in-court identification, also directly testified that they identified Gilbert at the line-up was subject to a *per se* exclusionary rule. The court stated that the testimony was a direct result of the illegal line-up and that therefore the State was not entitled to an opportunity to show that the testimony had an independent source. The court held that the witness's testimony of his line-up identification would enhance the impact of his in-court identification on the jury and "seriously aggravate whatever derogation exists of the accused's right to a fair trial". The court concluded that unless the California Supreme Court was able to declare a belief that it was harmless error beyond a reasonable doubt that Gilbert would be entitled on remand to a new trial.

■■ In testing the effect of the erroneous admission of the evidence of the line-up here, we thus apply the harmless error rule: whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. See *Chapman v. California* (1967), 17 L.Ed.2d 705, 710.

■■ Mrs. Abolins was first questioned by the prosecutor as to the circumstances of the entry of two men into the motel near midnight on the date of the crime. One of the men was carrying a rifle with a short barrel. Although she described him as having a "very sheer nylon" stocking over his face, she testified that it did not distort his features and she was able to see them. She testified that the man was in her view in a well lighted room 4 to 5 minutes and that she saw him face to face and from other views. She positively identified the defendant Dismuke in court as the man she was describing. After being questioned for some further period of time as to the occurrence, Mrs. Abolins was asked by the prosecutor whether she had occasion to see either of the defendants at any prior time. On objection, the court heard arguments in chambers on defendant's counsel's objection that the testimony as to the line-up was hearsay,[2] and on his

---

[2] The hearsay objection does not appear to have been pursued either in the trial court or here. See *The People v. Cook,* 33 Ill.2d 363, 370, 371 (1965); *Gilbert v. California,* 18 L.Ed.2d 1178, *supra,* 1186. See also 71 A.L.R.2d 449. We therefore do not consider the question of the admissibility of evidence of extra judicial identification, either as corroborative evidence or as independent evidence of identity.

further objection that no testimony should be allowed relative to a line-up that defendant may have participated in without the presence of his attorney. The defendant testified on the motion to suppress. The police officers who detailed the procedures at the line-up also testified that Mrs. Abolins viewed the line-up which included four other people besides defendant Dismuke, all of whom were negro males, as was Dismuke, and that she wrote the number displayed by Dismuke on a piece of paper with no communication or suggestion from the officers. There was evidence that the Public Defender, during at least part of this time, was looking through the same one-way glass window. The evidence supports the finding of the court that the line-up was fairly conducted and not unduly suggestive.

██ Under the circumstances, even if *Wade* and *Gilbert* are assumed applicable to this pre-indictment line-up, we do not find that there is a reasonable possibility that the evidence complained of might have contributed to the conviction. We, therefore, hold that the testimony related to the pre-trial line-up was harmless error and not the cause for a reversal of the conviction. See *United States v. Wade, supra,* at page 1165. See also *People v. Blumenshine* (1969), 42 Ill.2d 508, 513 and *People v. Nudo* (1971), 268 N.E.2d 894, 897, 898, 899.

Defendant next claims that a portion of the prosecutor's closing argument was improper and prejudicial so as to preclude a fair trial. Defendant's counsel had argued with reference to two persons who had walked in during the course of the armed robbery (and who were required to lie on the floor, face down and were relieved of their wallets),

"Where are they? I remind you that the State has the burden of proving to you beyond a reasonable doubt the guilt of this defendant.

Where are the eye witnesses? The other witnesses to this robbery— don't you think the defense has a right and don't you think you have the right to hear from them.

Maybe they can't make an identification like Mr. Beu says. We don't know what they would have said; that's right, that's the point we don't know what they would say."

Defendant's counsel also asked the jury not to be misled if the prosecutor put the burden on the defense to call the witnesses since the State had the resources and the two men were listed as State's witnesses.

In rebuttal the prosecutor's argument included the remark,

"They know as well as we do know that the law books setting over there, the red volumes provide they got just as much right, power and opportunity to subpoena witnesses from anyplace as we have. They have had those names and those addresses \* \* \*."

Defendant's counsel objected that the burden was on the State to call the witnesses and the court promptly sustained the objection.

■■■ It is clear that a defendant may comment on the failure of the prosecution to call material witnesses. See *People v. Scott,* (1967), 38 Ill.2d 302, 306.) The State is limited to a reply to the defendant's argument. (*People v. Wheeler* (1955), 5 Ill.2d 474, 485, 486.) *People v. Heywood* (1926), 321 Ill. 380, 383.) To the extent that the prosecutor's remarks might have unfairly inferred that the defendant had the burden to call the witnesses (See *People v. Munday* (1917), 280 Ill. 32, 47), the court by promptly sustaining defendant's objection prevented any misunderstanding on this question by the jury. In the context of the entire argument there was no prejudice to the defendant.

■■ Defendant also argues that he was prejudiced and denied the effective equal protection of the law as the result of the fact that he could have been seen by the jury in a barred detention cell as the jury passed into the courtroom. He argues that the jury would have difficulty in applying the presumption of innocence after the view. Also, that the fact that a defendant in a different economic position would have been out on bail, thus avoiding the possibility of prejudice, deprives this defendant of equal protection of the laws.

Here it appeared that the outer door of the detention cell was inadvertently ajar. The jury was already advised of defendant's incarceration by direct and cross examination of the codefendant. Under the circumstances, the error cannot be considered sufficiently prejudicial to deprive defendant of a fair trial or to otherwise offend constitutional safeguards.

The judgment below is affirmed.

Judgment affirmed.

GUILD and MORAN, JJ., concur.