THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES McDONALD, Defendant-Appellant.

(No. 72-333;

Second District—October 11, 1974.

Ralph Ruebner and Richard Wilson, both of State Appellate Defender's Office, of Elgin, for appellant.

John J. Bowman, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was charged with attempt murder and burglary, was tried by a jury, and was found not guilty of attempt murder but guilty of burglary. He was sentenced by the court to 20-35 years in the Illinois State Penitentiary, the sentence to be served consecutively with a prior sentence of 20-35 years for a similar offense.

The instant offense occurred on December 1, 1969. Defendant placed a wastebasket by a window and entered the apartment of the complaining witness. When she was awakened he was straddling her in her bed.

She testified that the light from a flood lamp came through the sheer curtains and she was able to see him well. She fought him off, chased him down the hall, and as he was opening the front door to leave, she again saw his face in good light at arm's length. He then fled.

Defendant had previously been convicted of a most similar offense which occurred on December 3, 1969, involving the entrance into an apartment of another woman where a knife was used and the complaining witness cut. His conviction was affirmed by this court, *People v. McDonald* (1972), 4 Ill.App.3d 62, 278 N.E.2d 91.

The complaining witness in the instant case viewed 100 pictures and 4 days after the occurrence viewed 10 pictures at the Wheaton police station in which she selected 2 photographs as suspects, one of which was the defendant. She also constructed an "identi-kit" composite picture of her assailant shortly after the occurrence. On December 14, 1969, the defendant drove to the Wheaton police station where he made a complaint that his car was being followed by an unknown vehicle. The car following the defendant was, in fact, an unmarked car of the Wheaton police department. The complaining witness was called to the police station and as she walked by the room where the defendant was with two officers in plain clothes, she immediately identified him as her assailant. The next day a lineup was had in the Du Page County jail and the defendant's counsel was present. Defendant's counsel made various suggestions as to how the lineup should be conducted, which were followed. The complaining witness identified the defendant in the group of five men in the lineup. The record indicates defense counsel did not see the identification number of the defendant written down by the witness at the time of the lineup. After the lineup was over defense counsel requested permission to be present at the interrogation of the complaining witness and this was denied.

Prior to trial, defense counsel made a motion to suppress the identification testimony of all witnesses at the lineup held on December 15, 1969. The record is not clear but it is obvious that the trial judge did in fact suppress the lineup identification. Immediately prior to trial the order suppressing the lineup identification was vacated by another trial judge and testimony relative to the lineup was admitted at the trial.

The defendant has raised six issues: (1) that the trial judge erred in vacating the earlier order suppressing the line-up identification; (2) that the refusal by the State to permit the presence of counsel at the identification portion of the lineup deprived him of his constitutional rights with relation to the lineup procedures; (3) that the State failed to prove by clear and convincing evidence that the in-court identification of the defendant had an independent origin arising from observa-

tions of the defendant uninfluenced by tainted pretrial photographic identification and show-up; (4) that the trial court allowed testimony of another witness of the similar crime committed 72 hours later on December 3, 1969, several miles away. Defendant contends that this evidence failed to establish a common design, motive, intent or knowledge; (5) that the only evidence other than the identification by the complaining witness is circumstantial evidence of no probative value; and (6) that defendant's sentence should be reduced to conform with the applicable provisions of the Unified Code of Corrections, the case not having reached final adjudication.

■■ The first three issues raised by the defendant are closely allied. The contention of the defendant that the order of the court suppressing the lineup identification previously entered prior to trial was an appealable order and should have been appealed is correct. He has cited *People v. Taylor* (1972), 50 Ill.2d 136, 277 N.E.2d 878, where the supreme court held substantially in accordance with defendant's contention, citing *People v. Quintana* (1967), 36 Ill.2d 369, 223 N.E.2d 161, and *People ex rel. MacMillian v. Napoli* (1966), 35 Ill.2d 80, 219 N.E.2d 489. Under the rationale of these cases the supreme court in *Taylor* held that the order could not be reviewed by another trial judge. While the above cases deal with motions made at preliminary hearings, we find that the same principle applies under Supreme Court Rule 604 which is not limited to preliminary hearings but provides

> "In criminal cases the State may appeal only from an order of judgment * * * suppressing evidence." Ill. Rev. Stat. 1973, ch. 110A, par. 604.

■■ The third contention of the defendant in this connection is that he is entitled to counsel at the lineup after he has been charged with a crime and the matter has become an adversary proceedings. The complaint against the defendant was signed on December 14, 1969, and the lineup was held on December 15, 1969. There is no question but that after the defendant is charged either by information, complaint or indictment, it is an adversary proceeding and he is so entitled to counsel. The Illinois Supreme Court so held in *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, wherein the court considered the United States Supreme Court decision, *Kirby v. Illinois* (1972), 406 U. S. 682, 32 L.Ed. 2d 411, 92 S.Ct. 1877, and in so doing held that a defendant was entitled to counsel at a line-up where the proceedings had become adversary in nature either by a formal complaint being filed or by an information being filed, as well as by indictment. Counsel for defendant has cited *People v. Dismuke* (1972), 3 Ill.App.3d 553, 278 N.E.2d 152, where we

held that no distinction existed between pre- and post-indictment line-ups and the right to counsel. This case was written prior to *Kirby, supra,* and *Burbank, supra,* which indirectly overruled this court by holding that right to counsel did not, in fact, exist in preindictment, precomplaint, or preinformation situations.

The record herein discloses that defense counsel was not present when the complaining witness identified the defendant immediately after the lineup. The police officer present at the lineup testified that the complaining witness wrote down the number 1, which was defendant's number in the lineup, after she viewed the five men who were in the lineup. The defendant has cited two cases in which opposing views in this regard have been set forth. In the California case of *People v. Williams* (1971), 3 Cal.3d 853, 92 Cal.Rptr. 6, 478 P.2d 942, in a four-to-three decision, the California Supreme court held that it would be meaningless to have defense counsel present at the lineup and yet not have him present at the time of the identification. We agree with this decision. However, in *United States v. Cunningham* (4th Cir. 1970), 423 F.2d 1269, one of several witnesses misidentified the defendant, an altercation between counsel took place, defense counsel was ejected from the interrogation, and the complaining witness Byrd, who unequivocally identified the defendant at trial, picked the defendant from the lineup in the absence of defendant's counsel. The court found that this was not error and specifically held that defense counsel's presence was not required in the interrogation of the complaining witness after the lineup had concluded, holding that *United States v. Wade* (1967), 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L.Ed.2d 1178, S.Ct. 1951, did not apply to subsequent interrogation. It would appear that Cunningham and Williams may well be in conflict. In any event, this court is of the definite opinion that *Wade* and *Gilbert* do require that counsel for the defendant not only be present at the lineup but at the identification, if any, of the defendant by the complaining witness.

■■ In summation of these contentions of the defendant, we find first that the trial court should not have reversed the order of suppression of identification in the lineup. The proper procedure to have been taken by the State for review of the order suppressing the lineup identification was by appeal under the provisions of Supreme Court Rule 604(A)(1) supra. We further find that defense counsel should have been allowed to be present, if he were not, at the identification of the accused. We specifically find, however, that subsequent interrogation of the complaining witness after the identification does not carry with it the right of

defense counsel to be present. See *Cunningham* and *Williams, supra.* In *Dismuke, supra,* with relation to the right of defendant to have counsel present at the line-up, we stated the following:

"Under the circumstances, even if *Wade* and *Gilbert* are assumed applicable to this pre-indictment line-up, we do not find that there is a reasonable possibility that the evidence complained of might have contributed to the conviction. We, therefore, hold that the testimony related to the pre-trial line-up was harmless error and not the cause for a reversal of the conviction. [Citations.] 3 Ill.App.3d 553, 558.

There is no contention by the defendant that the lineup was not fairly conducted. As a matter of fact, as defense counsel points out, the defendant's attorney "arrived before the line-up and participated fully in the preparation and presentation of five suspects including defendant * * *." Further, defendant's counsel states, "While the record does not affirmatively show that defendant had requested the presence of counsel, the State clearly acquiesced to his participation up to the point of actual identification. Defendant clearly utilized counsel's help in the preparation and completion of the viewing process." The record clearly shows that the lineup was, in fact, fairly conducted and not unduly suggestive.

■■ Considering all of the above, the question arises as to whether the defendant was deprived of a constitutionally fair trial. In the case cited by the defendant, *People v. Burbank* (1972), 53 Ill.2d 261, 291 N.E.2d 161, the court stated at page 273:

"Whether the defendant was denied due process of law depends upon the totality of the circumstances surrounding the identification procedure. If the witness had an opportunity to observe and there is little likelihood of mistaken identification a conviction based upon a subsequent in-court identification will not be set aside."

■■ Defendant next contends that the State failed to prove by clear and convincing evidence that the in-court identification of the defendant had an independent origin arising from observations of the defendant uninfluenced by her observations of the defendant in the police station and her identification through photographs. We do not agree. Considering the facts herein, we find that the in-court identification of the accused by the complaining witness was sufficient, excluding the show-up view of the defendant in the police station and the lineup. The complaining witness was awakened by the defendant in a lighted room as he straddled her with his face looking down upon hers. She chased him down the hall after fighting him off and once again she saw him in the lighted

doorway as he fled from the apartment. In addition to that, she was able to make an "identi-kit" composite picture of the defendant immediately after the crime and was able to pick out 2 pictures from over 110 submitted to her, one of which was the defendant subsequently identified by her. As the court stated in *People v. Brown* (1972), 52 Ill.2d 94, 100, 285 N.E.2d 1, "the prosecutrix had ample opportunity to view the defendant and to have his facial characteristics and dress impressed upon her mind, so that she could positively identify him." In *Brown* the court went on to hold that identification under somewhat similar circumstances to the instant case was sufficient.

In the most recent case of *People v. Smith* (1974), 18 Ill.App.3d 859, 310 N.E.2d 734, we find a situation quite similar factually to the case before us. In *Smith* a young Negro boy accosted a woman on the street and stated, "Give me your purse or I will shoot you." The witness testified that she looked at the defendant for not more than 10 seconds, started running and was shot by the defendant Smith. The defendant was brought to the hospital and she recognized defendant's face. A lineup was then conducted in the hospital emergency room and she again identified him. The court held that the victim had the opportunity to view the defendant face to face for an adequate length of time, and in view of the immediacy of the hospital confrontation the court held that the hospital showup did not lead to a substantial likelihood of misidentification of the defendant. The court went on to hold that as the showup did not result in a denial of due process, the lineup was not significant. In the case before us the complaining witness had far more opportunity to view the defendant than the complaining witness had in the *Smith* case. (Also see *People v. Reynolds* (1970), 131 Ill.App.2d 121, 266, N.E.2d 525.) In *People v. Triplett* (1970), 46 Ill.2d 109, 263 N.E.2d 24, the Illinois Supreme Court discussed another comparable situation where the court held that the showup and lineup were not significant as the in-court identification was reliably predicated upon an observation independent of the challenged in-custody confrontations. The court stated:

> "It is clear that she had an excellent opportunity to observe him at her home, and form an accurate, reliable basis for subsequent identification." 46 Ill.2d at 114.

■■ Furthermore, assuming that the admission of the line-up identification was constitutional error, we find that the error was harmless. In *Gilbert v. California* (1967), 388 U.S. 263, 274, 18 L.Ed.2d 1178, 1187, 87 S.Ct. 1951, the United States Supreme Court recognized the possibility of harmless constitutional error in the admission of lineup testimony. The Court there stated that the test for harmlessness is whether the appellate

94

court is "able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California* (1966), 386 U.S. 18, 24, 17 L.Ed.2d 705, 710, 87 S.Ct. 824.) In the case before us, in applying that standard we find that the error was harmless beyond a reasonable doubt as to the defendant.

We therefore find that the prosecutrix's in-court identification did have an origin independent of the lineup and the observation by the prosecutrix of the defendant in the police station. See *People v. Peacock* (1974), 20 Ill.App.3d 969.

■■■ The fourth contention of the defendant pertains to the testimony of the similar crime committed on December 3, 1969, and of which the defendant was convicted prior to the instant trial. The basic premise is that evidence of other crimes is not admissible for the purpose of, or as showing, the propensity of the defendant to commit a criminal act. The test is whether such evidence of the other offenses tends to establish motive or intent, or the existence of a common scheme or design. As we stated in *People v. Allen* (1971), 1 Ill.App.3d 197, 201, 272 N.E.2d 296, 299:

> "But such evidence is not admissible where it only has value to create an inference—necessarily prejudicial—that because a man has committed other crimes he is more likely to have committed this one. [Citations.]"

In *Allen* we discussed the various cases pertaining to the admissibility of another offense and concluded that:

> "We believe that the real test of the admissibility of other crimes to be distilled from the decisions remains that of independent relevance to an issue in the case." (1 Ill.App.3d at 201.)

We went on to hold that under the facts in that case that the evidence of the other crime tended to prove common design, motive, intent or knowledge. In *People v. Brown* (1962), 26 Ill.2d 308, 315, 186 N.E.2d 321, the court stated:

> "While it is the general rule that evidence of other offenses unrelated to the crime for which a defendant is on trial is not competent, well recognized exceptions establish that such evidence may be admissible to prove design, motive or knowledge when those matters are in issue or relevant. (*People v. Watkins*, 309 Ill. 318; *People v. Davis*, 412 Ill. 391; Cleary, Handbook of Illinois Evidence, Sec. 7.10, p. 89.)"

In *People v. Carter* (1968), 38 Ill.2d 496, 232 N.E.2d 692, the trial court permitted testimony of a crime committed by the defendant 7 years after the charged offense. The court stated that it felt that defendant's conduct in connection with the one attack was very similar in significant respects

to his conduct relative to the murder committed by him, and that it indicated a common design and was admissible as an exception to the rule prohibiting evidence of another crime other than the one for which the defendant was being tried. (See also *People v. Hayes* (1972), 3 Ill. App.3d 1027, 279 N.E.2d 768.) In *People v. Nelson* (1974), 17 Ill.App.3d 224, 308 N.E.2d 122, we find a case remarkably similar to the factual situation before us as disclosed by the following citation therefrom:

> "Furthermore, evidence of subsequent crimes is admissible where it tends to establish motive or intent, absence of mistake, or the existence of a common scheme or design. [Citations.] In the present case, the evidence established that the defendant followed a common design on each of the two occasions in question. Both victims were women alone at night, and both were accosted while about to enter their homes. In both instances, the defendant placed his arm around the victim's neck, held a gun to her head and demanded the keys to her house. Therefore evidence of the defendant's conduct toward Mrs. Elcock, to the extent that it revealed this common method of operation, was admissible." (17 Ill.App.3d at 227.)

In the case before us the attack for which the defendant was convicted prior to the instant trial, was similar in several unusual aspects. Entrance to the apartments of the two women was gained by the placing of a wastebasket or object by a window, the defendant straddled both women in the same fashion, he wore gloves, tennis shoes and dirty khaki or green pants. We do not find that under the specific facts of this case that the evidence of the other similar offense committed within 72 hours in a neighboring town was prejudicial error, but was in fact competent evidence to prove design, motive and intent on the part of the defendant. See *People v. Kovacivich* (1973), 10 Ill.App.3d 797, 293 N.E.2d 33.

Defendant next contends that the circumstantial evidence, exclusive of the identification by the victim, was insufficient to establish defendant's guilt beyond a reasonable doubt. We do not find that the circumstantial evidence, if it were, was necessary for the proof of defendant's guilt. As the supreme court said in *People v. Brinkley* (1965), 33 Ill.2d 403, 405-406:

> "Where the identification of an accused is at issue in a criminal case, we have constantly reiterated the rule that the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.]"

The courts of this state have reiterated this statement of the law in numerous cases.

Defendant lastly contends that inasmuch as the 1969 offense had not reached final adjudication on January 1, 1973, that the provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4) apply. With this we agree. It is not necessary to cite citations as this court and the Illinois courts have ruled to that effect in numerous instances. The defendant was convicted of burglary. Burglary is a class 2 felony (Ill. Rev. Stat. 1973, ch. 38, par. 19—1) and the maximum sentence that may be imposed for a class 2 felony under the Unified Code of Corrections is 20 years; likewise, the minimum shall not exceed one-third of the maximum. Defendant's sentence of 20-35 years is therefore reduced to a minimum of 6 years and 8 months, and a maximum of 20 years. The judgment of the trial court is affirmed as modified.

Affirmed as modified.

T. MORAN, P. J., and SEIDENFELD, J., concur.