(No. 47179.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CHARLES McDONALD, Appellant.

*Opinion filed Nov. 25, 1975.—Rehearing denied Jan. 22, 1976.*

CREBS, J., took no part.

Ralph Ruebner, District Defender, Illinois Defender Project, of Elgin (Phyllis J. Perko and Richard J. Wilson, Assistant Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield (James B. Zagel, Jayne A. Carr, and Timothy B. Newitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Charles McDonald, was tried and found guilty of burglary (Ill. Rev. Stat. 1969, ch. 38, par. 19—1) and not guilty of attempted murder (Ill. Rev. Stat. 1969, ch. 38, par. 9—1) after a jury trial in the circuit court of Du Page County and was sentenced to the penitentiary for a term of not less than 20 years nor more than 35 years. The sentence was ordered to be consecutive to an earlier sentence imposed for burglary. The appellate court affirmed the conviction (23 Ill. App. 3d 86), but reduced the defendant's sentence to a term of not less than 6 years 8 months nor more than 20 years to comply with the provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4). We granted the defendant's petition for leave to appeal.

In the early morning hours of December 1, 1969, Lynn Bowers was asleep in the bedroom of her apartment in Wheaton. She was awakened by a man who had his gloved hands around her throat and was attempting to choke her. He was kneeling on the bed straddling Mrs. Bowers as she lay on her back. The light in the bedroom had been turned off by Mrs. Bowers when she retired, but a floodlight located outside the apartment provided enough light, Mrs. Bowers testified, to enable her to get a good look at her assailant. Mrs. Bowers turned in bed and kneed the intruder. When she jabbed him with her elbow and began to scream, he ran from the room with Mrs. Bowers in pursuit. As he ran out of the front door of the apartment, he stopped, turned and looked directly at Mrs. Bowers, who was then no more, according to her testimony, than an arm's length from him. The area was well lighted, Mrs. Bowers testified, and she was again able to get a good look at her attacker.

When the police arrived, Mrs. Bowers gave a description of her attacker and assisted in the preparation of a composite likeness of him. The police investigation showed

that the intruder had entered the apartment by standing on an overturned wastebasket and removing the window screen. In the next several days Mrs. Bowers viewed over a hundred photos shown to her by the police and then she picked out a photograph of the defendant. She said she thought that the defendant was the man but she could not be completely certain because the man who was in the room with her had very long hair and in the photograph shown her the man had short hair.

The defendant appeared at the Wheaton police station on December 14, 1969, complaining that he was being followed. Without the defendant's knowledge, he was being kept under surveillance by Wheaton police officers who used an unmarked car. The defendant was taken to a room in the police station where he was told to wait, and Mrs. Bowers was brought to the station to determine if she could identify the defendant as her assailant. She viewed the defendant through a two-way mirror in the room where the defendant was sitting with two plainclothes police officers. She immediately identified him. The defendant was placed under arrest and charged with burglary and attempted murder. Shortly thereafter he was placed in a lineup with what appears to have been four other prisoners. Mrs. Bowers viewed the lineup with three other women who had been victims of crimes. The defendant was represented by counsel at the lineup, and at his suggestion each woman was given a piece of paper on which she was instructed to write the number in the lineup of anyone they might identify. After the lineup viewing was completed, the women were escorted separately into a room in which they individually told the police and an Assistant State's Attorney of the identification, if any, they had made. However, the defendant's counsel was not allowed to enter the room and was not present when Mrs. Bowers informed the police and the prosecutor of the number she had written on the paper. She testified at trial that she had written the defendant's lineup number at the

lineup and had done so before she went into the room with the police and the Assistant State's Attorney.

Prior to trial, the defendant made a motion before Judge LeRoy Rechenmacher to suppress any lineup identification testimony by Mrs. Bowers, claiming his sixth amendment right to counsel had been violated because his attorney was not allowed to be present when Mrs. Bowers informed the police of her identification of him. There was a hearing by Judge Rechenmacher on the motion, but the record does not reveal its disposition. The case was transferred to Judge Stanley Thomas, and on the date set for trial the prosecution made a motion before Judge Thomas requesting that the order entered by Judge Rechenmacher suppressing any lineup testimony by Mrs. Bowers be set aside. Both the prosecutor and the defendant's attorney represented to Judge Thomas that such an order had been entered by Judge Rechenmacher. Judge Thomas granted the prosecution's motion and, after hearing additional evidence presented by the State, held that lineup testimony by Mrs. Bowers would be admissible.

At trial Mrs. Bowers testified to her identification of the defendant through the two-way mirror and at the lineup. She also testified that she could have identified the defendant in court without having seen him previously at either the lineup or in the room.

The State also introduced the testimony of Eleanor Bailey over the objection of the defendant. Mrs. Bailey testified that she had been similarly attacked by the defendant while sleeping in the bedroom of her house on December 4, 1969, which was three days after the attack on Mrs. Bowers. As will be pointed out, her testimony showed that the circumstances of the attack upon her and those of the attack upon Mrs. Bowers were very similar. (The defendant had previously been convicted of burglary as a result of this entering of Mrs. Bailey's home, and his conviction had been affirmed by the appellate court (4 Ill. App. 3d 62).) As we have stated, the jury found the

defendant guilty of burglary of Mrs. Bowers's apartment but not guilty of attempted murder. On the defendant's appeal, the appellate court held that Judge Thomas had improperly vacated what the parties agreed had been entered, a suppression order, and held that the defendant's counsel had a right to be present at the reporting by Mrs. Bowers of her identification, but the court concluded that the error involved "was harmless beyond a reasonable doubt." 23 Ill. App. 3d 86, 93-94.

The defendant renews several contentions involving his identification by Mrs. Bowers which were rejected by the appellate court. We consider that even if, without discussion, we assume the correctness of his contentions and accept them for purposes of this opinion, they are overcome because the record shows that the in-court identification of the accused by Mrs. Bowers had an origin independent of the showup or the lineup and because it can be said that the error, if any, from Mrs. Bowers's testimony as to her reporting her identification of the defendant to the police after the formal lineup was "harmless error beyond a reasonable doubt." *Gilbert v. California,* 388 U.S. 263, 274, 18 L. Ed. 2d 1178, 1187, 87 S. Ct. 1951.

Thus, accepting *arguendo* the defendant's contentions: (1) that there was an order of suppression entered by Judge Rechenmacher and that the order was correct in holding that the refusal to allow the defendant's attorney to be present when Mrs. Bowers reported her identification to the police was error (on this question there appear to be differing views (see *United States v. Wilcox* (4th Cir. 1974), 507 F.2d 364, *cert. denied* (1975), 420 U.S. 979, 43 L. Ed. 2d 661, 95 S. Ct. 1408; *People v. Williams* (1971), 3 Cal. 3d 853, 478 P.2d 942, 92 Cal. Rptr. 6)); and (2) that it was error for Judge Thomas to have reviewed the order of suppression entered by Judge Rechenmacher (see *People v. Taylor,* 50 Ill.2d 136, 140); and (3) that Mrs. Bowers's viewing of the defendant

through the two-way mirror at the showup was improperly suggestive, there nevertheless was not reversible error in the identification process. We conclude that "under the 'totality of circumstances' it [the showup procedure] was not conducive to a substantial likelihood of mistaken identification." (*People v. Camel*, 59 Ill.2d 422, 431; *People v. Bey*, 51 Ill.2d 262, 265; *Neil v. Biggers*, 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375.) We also conclude that Mrs. Bowers had an adequate opportunity to observe the defendant at the time of the commission of the crime and any error in the identification process at the lineup was thus overcome. (*United States v. Wade*, 388 U.S. 218, 242, 18 L. Ed. 2d 1149, 1166, 87 S. Ct. 1926; *People v. Fox*, 48 Ill.2d 239, 245.) Further, if there is deemed to have been a denial of counsel through the exclusion of the defendant's attorney and thereby error in admitting Mrs. Bowers's testimony of her identification of the defendant at the lineup, it can be said on this record that it was "harmless error beyond a reasonable doubt." *Gilbert v. California*, 388 U.S. 263, 274, 18 L. Ed. 2d 1178, 1187, 87 S. Ct. 1951; *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824; *Harrington v. California*, 395 U.S. 250, 254, 23 L. Ed. 2d 284, 287, 89 S. Ct. 1726; *Brown v. United States*, 411 U.S. 223, 231-32, 36 L. Ed. 2d 208, 215, 93 S. Ct. 1565.

The record shows from the testimony of Mrs. Bowers that the light in her bedroom and outside the front door of her apartment was good. When she awakened to find the defendant on her bed she was able to observe him at a distance of no more than two to three feet. As he ran out of the front door of her apartment, he turned and looked directly at Mrs. Bowers, who testified she was no more than an arm's length from him in an area that was well lighted. She was able to furnish the police a description of her attacker and she assisted in preparing a composite likeness of him. In the next several days following the burglary, Mrs. Bowers viewed over a hundred photographs

exhibited to her by the police and she picked out a photograph of the defendant.

There was no error involving the defendant's identification requiring reversal of the conviction.

We cannot accept the next contention of the defendant that there was error in the admission of the testimony of Mrs. Bailey concerning the attack on her. It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. (*People v. Lehman,* 5 Ill.2d 337, 343; *People v. Palmer,* 47 Ill.2d 289, 296; *People v. Kovacivich,* 10 Ill. App. 3d 797.) In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. *People v. Dewey,* 42 Ill.2d 148, 157; *People v. Cole,* 29 Ill.2d 501, 503.

The character of the attacks upon Mrs. Bowers and Mrs. Bailey and the *modus operandi* in each were similar in several respects. The attacks were committed in the early morning hours. In the commission of each crime the burglar gained entrance to the residence by removing a window screen while standing on an overturned refuse basket. In each case the manner of the attack upon a female victim was similar. In each case the intruder wore gym shoes, khaki pants and gloves. Under the circumstances there was no error in admitting the testimony of Mrs. Bailey.

The last contention of the defendant is that there was not sufficient evidence to establish his guilt beyond a

reasonable doubt. However, it is the function of the jury to pass upon a question of an accused's guilt, and we will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of the accused's guilt. (*People v. Stringer,* 52 Ill.2d 564, 568; *People v. Peto,* 38 Ill.2d 45, 49.) We cannot say the evidence in the record before us raises a reasonable doubt of the defendant's guilt.

For the reasons given herein the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.