THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* RANDY C. DAUGHERTY, Defendant-Appellant.

Fourth District   No. 4—82—0185

Opinion filed January 28, 1983.

542

Daniel D. Yuhas and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, and Ginevera K. Moore, law student, for appellant.

Michael R. Roseberry, State's Attorney, of Pittsfield (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Defendant, Randy C. Daugherty, appeals a judgment of conviction of murder entered in the circuit court of Pike County on January 12, 1982, following a jury trial. Defendant testified at trial that he had stabbed the victim, Robert E. Shepherd, to death on September 14, 1981, but maintained he did so in self-defense. Defendant's sole contention on appeal is that the trial court committed reversible error in admitting, over defendant's objection, evidence of a conspiracy entered into by defendant to rob and murder another individual prior to the commission of the offense for which he was convicted.

Under the State's evidence, the victim was last seen alive at

about 8:45 p.m. on September 14, 1981, when he purchased 12 cans of beer at a Pittsfield grocery store. A Pike County deputy sheriff testified that later that night, while on patrol, he came upon the victim's automobile overturned at the bottom of a hill with a knife lying on the ground next to the vehicle. According to other testimony, the next morning, defendant's body was found next to a cornfield and his eyeglasses, pants with the pockets turned inside out, underwear, and shoes were strewn about nearby. A physician who conducted postmortem examinations of defendant's body testified: (1) the victim's body had 10 stab wounds; (2) three of the wounds were possibly fatal; and (3) a chemical analysis of the victim's blood indicated a .197% ethyl alcohol content at the time of death, an amount indicating substantial intoxication.

Patti Otwell testified that on the morning of September 15, 1981, defendant told her he had "rolled" a car the previous evening and that at the time he had "Bob's" wallet in his pocket, but when he got out of the car, he no longer had it. Ms. Otwell further testified that while they were talking, a call for an ambulance was broadcast on a police scanner which was in the room where they were talking. She stated that upon hearing the broadcast, defendant stated: "I know that guy's dead *** I stabbed him five or six times in the chest, once in the head and slit his throat."

Defendant testified to the following: He was 20 years of age. On September 14, 1981, he and Eddie Hargis hitchhiked from Pittsfield to the home of Alfa Moore in Maysville, in Pike County. Finding Moore was not at home, defendant entered Moore's house through a broken window, remained inside for a few minutes and returned outside without taking anything from Moore's residence. When Moore returned, the three of them talked for "a couple of hours." Then defendant and Hargis hitchhiked to New Salem, also in Pike County, and after "looking around" started to walk back to Pittsfield. While hitchhiking, they obtained a ride in a vehicle driven by the victim, Robert Shepherd. Defendant and Hargis were given beer by Shepherd as they drove along. After returning to Pittsfield, Shepherd went into a grocery store to buy more beer. At that time Shepherd showed them he had only six dollars in his possession. They then drove out of town with Sherpherd, who made some homosexual advances toward them. Hargis became rather drunk, was driven back to Pittsfield and let out at his grandparents' home. At that time Hargis gave defendant a hunting knife which defendant took to scare Shepherd if it became necessary to do so.

Defendant described the stabbing of Shepherd in these words:

"We sat in the car for a little while and was drinking a beer and then he grabbed my leg again and I told him to quit it because I had me a girlfriend and he got mad at me so I got out \*\*\* on the hood \*\*\*. I was sitting there drinking my beer and I don't really know how long it was but he come, he come around the side of the car and he knocked me off the hood of the car onto the ground \*\*\* and he came after me again and he slapped me on \*\*\* this side here and I fell down again because we was drunk \*\*\*. I found the knife and I just stood up and swung it at him and I don't know if it hit him or not \*\*\*. Well, he came after me, I swung the knife at him, he just stopped and kind of looked at me, you know, I don't really know what happened because it was just happening. He come after me again and I just poked him with it, you know. I didn't want to really hurt him, I guess, but he just kept coming after me and I just kind of stuck the knife out there and I don't know, I don't know how long we was wrestling around or doing that."

Defendant testified that after the stabbing, he drove Shepherd's car to Hargis' grandparents' house in order to obtain his help in disposing of the body, but found that Hargis was not available and returned to the scene. Defendant maintained that he "rolled the automobile on the way back and had to walk the rest of the way to where the body lay. Defendant stated he moved the body into the weeds, looked for, but could not find the knife, and walked back to Otwells' in Pittsfield. On cross-examination defendant admitted: (1) he took two briefcases containing "important papers" from the vehicle; (2) he did not report the incident to the police; (3) he did not mention to Patti Otwell that Shepherd had attacked him; and (4) when questioned by authorities, he gave conflicting statements.

The propriety of the admission of evidence of defendant's involvement in a conspiracy must be determined in the context of the foregoing testimony. The State's contention that defendant had engaged in a conspiracy was based largely on the testimony of Diane Stephenson which was as follows. On September 13, 1981, she, Hargis, Moore and defendant talked and joked on the courthouse lawn in Pittsfield. She, Hargis and defendant then went for a walk. During the walk defendant asked Hargis to go to Texas with him because there was a warrant outstanding for his arrest. Defendant pointed to an automobile and said it would be easy to steal. Defendant later suggested he and Hargis steal a car and go to Moore's where they could get guns and money. Defendant said that if Moore was there, they could kill him.

In his testimony, defendant admitted that on September 13 he and Hargis had talked of robbing and then killing Moore and that he had stated he knew of a place to hide Moore's body. Moreover, he acknowledged that he and Hargis broke into Moore's home with the intent to steal.

■ The general rule in Illinois is that although evidence of the commission of crimes other than those charged in a criminal prosecution may not be introduced to show the defendant's propensity to commit the crimes charged, such evidence may be admitted to show the defendant's intent, knowledge or motive, and the fact that the defendant acted in pursuance of a common scheme or design. (See *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Moreover, such evidence is admissible only where it is so clearly connected with the main issue in the case at bar as to tend to prove the accused guilty of the offense charged. See *People v. McCambry* (1979), 76 Ill. App. 3d 314, 395 N.E.2d 129.

In *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667, the court stated:

> "Relevance is the touchstone of admissibility and defendant's other crimes, even though sharing a common *modus operandi*, are inadmissible unless the State shows that the evidence is probative of a proposition at issue." 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667, 672-73.

In arguing that the evidence of the conspiracy was not relevant to the question of whether defendant murdered Shepherd, defendant places substantial reliance upon the case of *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, the most recent case in which the supreme court discussed in detail the admissibility of evidence of this nature. There, an accused was on trial for the murder of his former father-in-law. Evidence was offered that a few hours after the defendant's former father-in-law was slain, the defendant committed arson by setting fire to the house of the defendant's former wife, the victim's daughter. The supreme court held admission of evidence of the arson to be reversible error. The court noted the obvious prejudice of the testimony because it might have been considered by the jury as testimony to prove a general criminal propensity on the part of the defendant. The court rejected the State's principal argument that the jury could infer from the evidence that defendant had a guilty conscience and burned the house because he had taken the murder weapon from the house and wanted to destroy the house so that the absence of the weapon would not be noticed. The court concluded that evidence that this was defendant's intent in burning the house was

too weak to give rise to such an inference. The court then explained that merely because the two offenses occurred within the same community and on the same day did not make evidence of defendant's commission of the arson probative of his commission of the murder.

The case on appeal differs from *Lindgren* in that here the extra-indictment offense allegedly occurred before rather than after the offenses for which the defendant was convicted. No contention is made here that the conspiracy evidence was offered to show a guilty conscience on the part of the defendant. The time span and distance between the commission of the two offenses here and in *Lindgren* are much the same. We agree with defendant that the proximity in time and location does not of itself make the conspiracy evidence admissible. The question of relevancy must be considered in the context of the factual issues before the jury.

The defendant was charged with murder in three counts: one charged a mental state of intent to kill (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)), another charged a knowledge that defendant's conduct created a strong probability of death or great bodily harm to the victim (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2)) and the third charged a felony murder committed during a robbery (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)). As the defendant admitted the killing but claimed justification, the ultimate question for the jury concerned the defendant's state of mind at the time of the offense and whether he was attempting a robbery.

■■ ■ The evidence that: (1) the victim's wallet was never found; (2) the victim's pants pockets were turned inside out when found; and (3) the defendant admitted he had taken the decedent's wallet but then lost it all tended to prove defendant had at least attempted to rob the victim. Evidence of (1) the number and severity of the victim's wounds, (2) defendant's admission of the killing to Ms. Otwell while making no mention to her of an attack upon him by the victim, and (3) defendant's attempts to conceal that he had killed the victim all negated defendant's justification defense. Under this evidence, testimony that (1) one day before the killing of Shepherd, defendant had solicited an agreement to kill another to get money to effectuate an escape from the community, and (2) on the day of the killing, defendant went to the home of the proposed victim of the conspiracy, committed a burglary there, but did not attack the proposed victim of the conspiracy and did not find anything of value to steal all tended to prove that defendant had a motive to kill Shepherd to get the money he sought. Moreover, evidence that there was an intent to kill the victim of the conspiracy would tend to prove an intent to kill a victim

whose body was apparently searched by defendant and from whom defendant took property.

We deem the evidence in question to have been clearly connected to the murder charge against defendant and probative of his guilt on the murder charge. The introduction of the evidence was proper. The conviction is affirmed.

Affirmed.

MILLS and MILLER, JJ., concur.